[Civ. No. 20326. Third Dist. Oct. 20, 1982.]

LARRY R. BARTSCHI, Plaintiff and Appellant, v.
CHICO COMMUNITY MEMORIAL HOSPITAL et al.,
Defendants and Respondents.

COUNSEL

John N.Bach for Plaintiff and Appellant.

Marsh, Marsh & Glusman, Harry M. Marsh, Robert A. Glusman, McDonough, Holland & Allen, Gary F. Loveridge, Betsy S. Kimball, Barr,

Minoletti & Newlan, Douglas H. Newlan, D. Timothy Born, John Minoletti, Owen J. Singer and E. Beth Livezey for Defendants and Respondents.

## OPINION

**EVANS, J.**—Dr. Larry R. Bartschi (plaintiff) sued defendants Chico Community Memorial Hospital (Chico), N.T. Enloe Memorial Hospital (Enloe), and Feather River Hospital (Feather River) alleging his wrongful removal from their medical staffs. He appeals various orders and a judgment which (1) denied him discovery against Chico and Enloe, (2) granted summary judgment to Feather River because of his failure to exhaust his administrative remedies, (3) denied his motion to reconsider that judgment, and (4) denied him a preliminary injunction against Chico and Enloe. We affirm.

### FACTS AND PROCEEDINGS BELOW

The following lengthy examination of the facts and proceedings is necessary to understand the posture of the case.

### Chico and Enloe

Plaintiff applied for joint medical staff privileges at Chico and Enloe in late 1976. He was granted privileges as a "provisional" member of both staffs in the fall of 1977.

In mid-1978 a joint hospital committee began an audit of plaintiff, apparently prompted by a problem involving one of his patients. A representative of the California Medical Association (CMA) later joined in the audit. As a result of its audit, the CMA issued a report on January 17, 1980, largely unfavorable, and recommended modification of plaintiff's privileges if deficiencies in his "surgical management" persisted over the next six months.

On February 21, 1980, the Chico Medical Staff Executive Committee recommended that plaintiff's staff privileges be terminated. A letter of the same date advised plaintiff of the recommendation, and of his right to a hearing and appellate review under the hospital's bylaws.

On February 27, plaintiff lunched with Dr. Jay Gibson, the chairman of the committee that had audited plaintiff, at Gibson's invitation. Plaintiff claims that Gibson urged him not to pursue his administrative remedies, but to resign; if plaintiff resigned, Gibson allegedly promised that Chico would be under no

obligation to report plaintiff to the State Board of Medical Quality Assurance (BMQA), and would not make it difficult for him to practice elsewhere. Gibson testified that he told plaintiff he thought no report to the BMQA would be necessary if plaintiff resigned, but could not be sure. He also testified to having suggested resignation as a possible alternative, but said he made no agreement with plaintiff on behalf of Chico.

On March 6, plaintiff requested a hearing on the executive committee's recommendation, and one was scheduled for March 27. However, on March 18, plaintiff tendered his resignation from the Chico staff, saying he had accepted a position elsewhere. Chico accepted his resignation and canceled the hearing. Plaintiff apparently resigned from the Enloe staff at approximately the same time.

Chico later determined that it was indeed required to make a report to the BMQA (see Bus. & Prof. Code, § 805), and it did so on April 1. In response to an inquiry by Feather River, Chico's administrator also sent that hospital a negative recommendation of plaintiff.

By a letter dated May 1, 1980, plaintiff's attorney advised Chico and Enloe that plaintiff was rescinding his resignation and demanded reinstatement. The next day Chico responded that there were no grounds for rescission; it did, however, invite plaintiff to reapply if he desired. On May 14, plaintiff did reapply, to both Chico and Enloe, and then filed suit on June 13.

On August 1, Chico's credentials committee recommended to the executive committee that plaintiff's reapplication be rejected. On August 21, the executive committee adopted this recommendation. By letter of August 22, plaintiff was notified of the executive committee's recommendation and advised of his right to a hearing and appellate review. Plaintiff requested a hearing by letter dated August 27.

At the time the briefs were filed in this appeal, the administrative review of plaintiff's reapplications to Chico and Enloe was apparently not yet complete.

*Feather River*

Plaintiff applied to Feather River for staff privileges in December 1976, and was granted "provisional active" status in July 1977. In October 1977, plaintiff's status was changed from "provisional active" to "provisional courtesy" at his request.

On March 6, 1980, plaintiff asked to advance again to "provisional active" status. However, because it had been learned that plaintiff was having dif-

ficulties at other hospitals in the area, Feather River's executive committee decided that no action should be taken on plaintiff's request for advancement until he provided sufficient information to resolve these questions. By letter of June 3, Feather River advised plaintiff of the committee's conclusion, and asked that he forward a copy of the CMA report on his performance at Chico and Enloe. Plaintiff was also asked not to exercise his courtesy staff privileges until the questions surrounding his application had been resolved.

On June 5, plaintiff's attorney wrote Feather River, demanding that plaintiff be given a hearing on his application for active status, and that he be allowed to continue to exercise his courtesy staff privileges pending consideration of his application. On June 6, Feather River responded that if the process were to be completed on his application, plaintiff would have to provide a copy of the CMA report.

As noted, plaintiff sued on June 13, 1980.

By letter of June 24, Feather River advised plaintiff that his courtesy staff privileges were suspended pending resolution of the questions as to his competence and of his right to a hearing on the suspension of those privileges. On June 25, plaintiff's attorney reiterated the demand that plaintiff be advanced to active status, and demanded a hearing regarding the suspension of courtesy staff privileges.

On July 9, plaintiff received a hearing before Feather River's judicial review committee regarding the suspension of his courtesy staff privileges; the suspension was affirmed on July 11. On July 14 plaintiff appealed this decision to the board of trustees. A hearing before the board was had on September 9, and the matter was taken under submission.

On September 22, 1980, the executive committee recommended to the board that plaintiff's application for advancement to active status be denied and that his courtesy staff privileges be terminated.

On October 1, 1980, the trial court granted Feather River's motion for summary judgment; at that time both of plaintiff's administrative appeals (the denial of his application for advancement, and the suspension of his courtesy staff privileges) were still under way.

*Court Proceedings*

On June 13, 1980, plaintiff filed a "Complaint for Declaratory Relief, Injunctive Relief and Damages, and Petition for Writ of Mandate and/or in the Alternative Prohibition" against Chico, Enloe, and Feather River. Against

Chico and Enloe plaintiff sought, inter alia, to rescind his resignation and be reinstated with full privileges, and against Feather River, inter alia, to be advanced to active status. Against all defendants, plaintiff alleged a potpourri of torts, violations of constitutional and civil rights, and failures to follow hospital bylaws.

That same day an order to show cause issued against the three named defendants. As part of that order, the defendants were ordered to show why plaintiff should not have access to a large volume of records concerning his status at the defendant hospitals.

On June 24, Chico moved for a protective order. On July 21, the court granted the motion, ordering that plaintiff be "precluded from further discovery in this proceeding until the conclusion of any and all administrative proceedings or until further order of this Court."

The three defendants subsequently moved for summary judgment. On October 1, the court denied the motions of Chico and Enloe, but granted Feather River's motion on the ground that plaintiff had not exhausted his administrative remedies with that hospital.

On October 20, plaintiff moved the court to "vacate and/or set aside and/or reconsider" the grant of summary judgment to Feather River. The court denied this motion on April 22, 1981.

On May 18, 1981, the court denied plaintiff's application for a preliminary injunction against Chico and Enloe.

Plaintiff appeals from (1) the protective order granted Chico on July 21, 1980; (2) the summary judgment granted Feather River on October 1, 1980; (3) the denial of his reconsideration motion on April 22, 1981; and (4) the denial of the preliminary injunction on May 18, 1981.

## DISCUSSION

While this appeal has required a lengthy factual and procedural recitation, it warrants only a brief discussion of the law.[1]

■ To begin, the grant of the protective order to Chico is not appealable. (*Southern Pacific Co.* v. *Oppenheimer* (1960) 54 Cal.2d 784, 786 [8 Cal.Rptr.

---

[1]Plaintiff asks that we treat this appeal as a petition for a writ of mandate. We decline the invitation. A writ may issue only on a verified petition (Code Civ. Proc. § 1086); plaintiff has filed none. Further, plaintiff has failed to show that appeal does not offer him a plain, speedy, and adequate remedy. (See *Phelan* v. *Superior Court* (1950) 35 Cal.2d 363, 366 [217 P.2d 951].)

657, 356 P.2d 441]; *Huenergardt* v. *Huenergardt* (1963) 218 Cal.App.2d 455, 458-459 [32 Cal.Rptr. 714].)

■ Next, Feather River was properly granted summary judgment because of plaintiff's failure to exhaust his administrative remedies. Plaintiff makes no attempt to argue that he did exhaust those remedies. Instead, he contends exhaustion is not a prerequisite to his bringing this suit. He is wrong. In *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410], the Supreme Court held that the exhaustion doctrine applies in just this kind of case, where a doctor sues a private hospital for damages or seeks an order compelling reinstatement or admission. Exhaustion is required even where, as here, constitutional violations are alleged. (*In re Thompson* (1975) 52 Cal.App.3d 780, 783 [125 Cal.Rptr. 261].) Contrary to what plaintiff maintains, the exhaustion doctrine was not abrogated in *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802 [140 Cal.Rptr. 442, 567 P.2d 1162]. The court in *Anton* does observe that exhaustion is not required where an administrative remedy is unavailable or inadequate (p. 829); plaintiff has made no such showing.

Plaintiff also cites us to the recent decision in *Patsy* v. *Board of Regents of the State of Florida* (1982) 457 U.S. 496 [73 L.Ed.2d 172, 102 S.Ct. 2557]. There the United States Supreme Court held that exhaustion of state administrative remedies is not a prerequisite to an action in federal court under 42 United States Code section 1983. The decision rested heavily on the paramount role assigned by Congress to the *federal courts* to protect the rights guaranteed by section 1983. Congress' special directive to the federal courts thus overrides, for those courts, the usual policy considerations behind the exhaustion doctrine. (See *Westlake, supra,* 17 Cal.3d at pp. 474-477, for a discussion of those considerations.) Nothing in *Patsy* requires this court to subordinate those considerations in the face of plaintiff's tenuous civil rights claim.

■ Next we consider the appeal from the denial of plaintiff's motion to "vacate and/or set aside and/or reconsider." The trial court treated the motion as made under Code of Civil Procedure sections 473 and 1008. But it noted, "The real thrust of the motion for reconsideration is simply the charge that defendant's summary judgment motion was erroneously decided." Appeal, therefore, should lie from the judgment, not the order denying the motion for reconsideration. (*Lamb* v. *Holy Cross Hospital* (1978) 83 Cal.App.3d 1007, 1011 [148 Cal.Rptr. 273].) Plaintiff did, however, seek to show some new facts in his motion. This can warrant reconsideration under Code of Civil Procedure section 1008,[2] and the court's ruling on reconsideration can be appealable. (See

---

[2]Section 1008 provides in relevant part: "(a) When an application for an order has been made to a judge, or to the court, and . . . granted, . . . any party affected by the order may, within ten (10) days after knowledge of the order and based upon an alleged different state of facts may,

*Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1011 [183 Cal.Rptr. 594].) The court's decision whether or not to vacate the prior judgment is, of course, within its broad discretion; here, where no new information of importance was alleged, that discretion was not abused. (See *Josephson* v. *Superior Court* (1963) 219 Cal.App.2d 354, 359 [33 Cal.Rptr. 196]; *City & County of S.F.* v. *Muller* (1960) 177 Cal.Ap.2d 600, 603-604 [2 Cal.Rptr. 383].)

 Finally, the preliminary injunction against Chico and Enloe was properly denied. The thrust of the trial court's ruling was that the evidence provided no basis for rescission of plaintiff's resignation because plaintiff's decision to resign had been voluntary. We have reviewed the transcripts of the lengthy hearings on the issue and find this conclusion to be amply supported.

The judgment and orders are affirmed.

Regan, Acting P. J., and Sparks, J., concurred.

A petition for a rehearing was denied November 15, 1982, and appellant's petition for a hearing by the Supreme Court was denied December 29, 1982.

make application to the same judge who made the order, to reconsider the matter and modify, amend or revoke the prior order."