554 A.2d 1256

Steven EARLE

v.

Robert Henry GUNNELL, et al.

No. 788, Sept. Term, 1987.

Court of Special Appeals of Maryland.

March 29, 1989.

Richard P. Neuworth (Leslie L. Gladstone, P.A., on the brief), Baltimore, for appellant.

J. Joseph Curran, Jr., Atty. Gen. and Mark D. McCurdy, Asst. Atty. Gen., Baltimore, for appellees.

Submitted before BISHOP and POLLITT, JJ., and EDWARD O. WEANT, Jr., Associate Judge of the Court of Appeals (retired) Specially Assigned.

BISHOP, Judge.

Steven Earle (Earle), the plaintiff below, appeals from an order of the Circuit Court for Washington County (Corderman, J.) granting the appellees', the State and Robert Gunnell (Gunnell), motion to dismiss/motion for summary judgment. We discern three issues from the appellant's brief. The first two of these issues are similar to those addressed by the Court of Appeals this term in *McCullough*

*v. Wittner,* 314 Md. 602, 552 A.2d 881 (1989) (holding that "a Maryland prison inmate, seeking monetary damages for personal injuries resulting from a correctional officer's alleged tortious conduct, which occurs in one of the institutions covered by the Inmate Grievance Commission statute, must file a complaint with and exhaust his remedies before the Commission prior to bringing a common law tort action."). We rephrase Earle's first two issues in the terms used by the Court of Appeals in *McCullough:*

I. "[W]hether a Maryland prison inmate, seeking monetary damages [from the State] for personal injuries resulting from a correctional officer's alleged tortious conduct, which occurs in one of the institutions covered by the Inmate Grievance Commission statute, must file a complaint with and exhaust his remedies before the Commission prior to bringing a ... [claim under the Maryland Tort Claims Act]." *McCullough,* 314 Md. at 605, 606, 552 A.2d 881.

II. "[W]hether a Maryland prison inmate, seeking monetary damages for personal injuries resulting from a correctional officer's alleged tortious conduct, which occurs in one of the institutions covered by the Inmate Grievance Commission statute, must file a complaint with and exhaust his remedies before the Commission prior to bringing ... a [cause of action under 42 U.S.C. § 1983]". *McCullough,* 314 Md. at 605, 606, 552 A.2d 881.

III. Whether appellant alleged facts sufficient to raise a constitutional claim against appellee, Gunnell, under 42 U.S.C. § 1983.

## FACTS

On February 20, 1985, Earle, an inmate at the Maryland Correctional Institution in Hagerstown, was attacked in his cell and stabbed repeatedly by two fellow inmates. As a result of this incident, Earle filed a two-count complaint in the Circuit Court for Washington County. Count I was brought pursuant to Title 42, U.S.C. § 1983 and alleged that Gunnell, in his capacity as a State correctional officer, had violated Earle's Fourteenth Amendment Due Process

Rights; Count II alleged a negligence claim against the State under the Maryland Tort Claims Act. The State and Gunnell responded to the complaint with a motion to dismiss both counts, or in the alternative, a motion for summary judgment on both counts. The circuit court granted the motion for summary judgment[1] on Count I on the ground that Earle's allegation against Gunnell stated, at most, a claim for mere negligence and, therefore, was insufficient as a matter of law to support a § 1983 action for deprivation of due process. The court also granted the motion to dismiss Count II for lack of subject matter jurisdiction due to Earle's failure to exhaust his administrative remedy provided by the Inmate Grievance Commission, Md.Ann. Code art. 41, § 4–102.1(*1*) (1986 & Supp.1988) formerly § 4–1104(*1*).[2] We first dispose of Earle's complaints regarding the court's disposition of Count II.

## I.

### *Tort Claims Act*
### (Count II)

■ Appellant's first issue was answered by the Court of Appeals this term in the case of *McCullough v. Wittner,* in

---

1. See n. 7, *infra.*

2. Actually, the circuit court's decision was based on Art. 41, § 4–1104(1) (1986). These two sections are identical; therefore, for clarity we shall refer only to the more recent section 4–102.1(1) which provides that:

    (1) *Judicial review.—Circuit Court.—*No court shall entertain an inmate's grievance or complaint within the jurisdiction of the Inmate Grievance Commission unless and until the complainant has exhausted the remedies as provided in this section. Upon the final decision of the Secretary of Public Safety and Correctional Services, the complainant shall be entitled to judicial review thereof. Proceedings for review shall be instituted in the circuit court of the county in which is located the institution where the complainant is confined. Review by the court shall be limited to a review of the record of the proceedings before the Commission and the Secretary's order, if any, pursuant to such proceedings. The court's review shall be limited to a determination of whether there was a violation of any right of the inmate protected by federal or State law or constitutional requirements.

which the Court held that a prison inmate, who had filed a common law tort action for monetary damages for personal injuries resulting from a correctional officer's alleged tortious conduct at the Maryland House of Correction, was required to first exhaust his administrative remedies provided under § 4–102.1. Although Earl's complaint was instituted under the Maryland Tort Claims Act rather than, as in *McCullough,* under the common law, this difference is irrelevant to the applicability of the Court's rationale. The holding in *McCullough* is based on the Court's conclusion that the Inmate Grievance Commission has statutory authority to consider "any grievance or complaint [filed by an inmate] against any officials or employees of the Division of Corrections...." § 4–102.1(d), and until that administrative remedy is exhausted, "no court shall entertain ... [the] complaint...." 4–102.1(*1*). Accordingly, we hold that a Maryland prison inmate, seeking monetary damages from the State for personal injuries resulting from a correctional officer's alleged tortious conduct, which occurs in one of the institutions covered by the Inmate Grievance Commission statute, must file a complaint and exhaust his remedies before the Commission, before proceeding with a claim under the Maryland Tort Claims Act.

■ The disposition of appellant's first issue does not end our discussion of the circuit court's dismissal of Count II of the complaint *sub judice.* As the Court held in *McCullough:*

> Under circumstances like these, where a plaintiff has both an administrative remedy and an independent judicial action, and the administrative agency's jurisdiction is deemed primary, it is appropriate for the trial court to retain, for a reasonable period of time, jurisdiction over the independent judicial action pending invocation and exhaustion of the administrative procedures.

*McCullough v. Wittner,* at 612, 552 A.2d 881. Accordingly, that portion of the circuit court's ruling which dismissed Count II of the complaint is reversed in order that the trial court "retain, for a reasonable period of time, jurisdiction

over the independent judicial action pending ... exhaustion
of the administrative procedures." *Id.* at 613, 552 A.2d 881.

## II.

### *42 U.S.C. § 1983*
### (Count I)

■ The circuit court and the parties assumed, without
having raised the issue, that exhaustion of the administra-
tive remedy provided by § 4–102.1 is not a prerequisite to
bringing an action under § 1983. Although this issue was
not raised below, this Court is free to decide it *sua sponte*
on appeal. *Bd. of Ed. for Dorchester Co. v. Hubbard,* 305
Md. 774, 787, 506 A.2d 625 (1986).

While the failure to invoke and exhaust an administra-
tive remedy does not ordinarily result in a trial court's
being deprived of fundamental jurisdiction, nevertheless,
because of the public policy involved, the matter is for
some purposes treated *like* a jurisdictional question.
Consequently, issues of primary jurisdiction and exhaus-
tion of administrative remedies will be addressed by this
Court sua sponte even though not raised by any party.
*See, e.g., Comm'n on Human Rel. v. Mass Transit,* 294
Md. 225, 232, 449 A.2d 385 (1982); *Sec. Dep't of Human
Res. v. Wilson, supra,* 286 Md. [639] at 645, 409 A.2d 713
[1979].

The question as to whether state administrative remedies
must be exhausted prior to proceeding with a § 1983 action
was previously decided by this Court in *Md.-Nat'l Cap. P.
& P. Comm'n v. Crawford,* 59 Md.App. 276, 475 A.2d 494
(1984), *aff'd* 307 Md. 1, 511 A.2d 1079 (1986). We held in
that case that "Crawford was not required to exhaust the
administrative remedies provided by the [Md. Nat'l Cap. P.
& P.] Commission prior to instituting her § 1983 action in
the Circuit Court...." Judge Alpert explained for the
Court that this holding was necessitated by a series of
Supreme Court decisions which rejected the argument that

a § 1983 action should be dismissed where the plaintiff has not exhausted State administrative remedies:

> In *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), the Supreme Court expressly held that "exhaustion of State remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Id.* at 516, 102 S.Ct. at 2568. The Court did not treat the issue as one of first impression. Rather, the *Patsy* decision was an affirmation of the principles set out in *McNeese v. Board of Education,* 373 U.S. 668, 671–72, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622 (1963). Speaking through Justice Douglas, the *McNeese* Court stated that "relief under [§ 1983] may not be defeated because relief was not first sought under state law which provided a remedy." *Id.* at 671, 83 S.Ct. at 1435. This is so because "[t]he federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Id. (quoting Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961)).

*Id.* [59 Md.App.] at 290, 475 A.2d 494. *See also Marker v. Talley,* 502 A.2d 972, 976, 977 (Del.Super.1985); *Bungs Bar & Grille, Inc. v. Florence Tp.,* 206 N.J.Super. 432, 502 A.2d 1198, 1216 (1985); *O'Connors v. Helfgott,* 481 A.2d 388, 391 (R.I.1984).

The soundness of our reasoning in *Crawford* was brought into question by the discussions of the courts of several other states which considered this issue and concluded that the holding in *Patsy* does *not* affect actions brought in State courts. *E.g., Bartschi v. Chico Community Mem. Hosp.,* 137 Cal.App.3d 502, 508, 187 Cal.Rptr. 61 (1982); *State ex. rel. Basham v. Med. Licensing Bd.,* 451 N.E.2d 691, 694 (Ind.App.1983). These courts properly contend that "[t]he [*Patsy*] decision rests heavily on the paramount role assigned by Congress to the *Federal courts* to protect the [constitutional] rights guaranteed by section 1983." *Bartschi,* 137 Cal.App.3d at 508, 187 Cal.Rptr. 61

(emphasis in original). As the Supreme Court reasoned in *Patsy* :

> The 1871 Congress intended § 1 to throw open the doors of the United States courts to individuals who were threatened with, or who had suffered, the deprivation of constitutional rights ... and to provide these individuals immediate access to the *federal courts* notwithstanding any provision of state law to the contrary.

102 S.Ct. at 2561 (citations omitted, emphasis added); and also in *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974):

> When federal claims are premised on [§ 1983]—as they are here—we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the *federal courts* to protect constitutional rights.

(emphasis added).

Our own Court of Appeals, in reviewing *Crawford*, expressed some doubt that the holding in *Patsy* actually affects § 1983 actions which are brought in State courts. Judge Eldridge, speaking for the Court, commented in *dicta:*

> While *Patsy* involved a § 1983 action brought in a federal court, the majority of state court decisions since *Patsy* have taken the position that the *Patsy* holding is applicable to a state court § 1983 action. *See, e.g., Beitel v. Board of School Com'rs of Mobile*, 419 So.2d 242, 245 (Ala.App.1982); *Logan v. Southern Cal. Rapid Transit Dist.*, 136 Cal.App.3d 116, 124, 185 Cal.Rptr. 878 (1982); *Laurel Park, Inc. v. Pac*, 194 Conn. 677, 690, 485 A.2d 1272, 1279 (1984); *Fetterman v. University of Conn.*, 192 Conn. 539, 549, 473 A.2d 1176 (1984);....
>
> ....
>
> Of course, as we recently emphasized in *County Exec., Prince Geo's County v. Doe*, 300 Md. 445, 454, 479 A.2d 352 (1984), "when an action is brought in a state court to enforce rights or claims under federal law, the Suprema-

cy Clause of the United States Constitution requires that federal law and policy be applied by the state court."

. . . .

Consequently, if Congress in 42 U.S.C. § 1983 intended that exhaustion of state administrative remedies should not be a prerequisite to bringing an action under that federal statute, *regardless of the judicial forum,* then the "Maryland policy" concerning invocation and exhaustion of administrative remedies would be immaterial, and the *Patsy* holding would be fully applicable to state court § 1983 actions.

The defendants and amici argue, however, that the congressional intent in § 1983, that state administrative remedies need not be invoked or exhausted, was aimed solely at federal court actions, and that Congress did not have such intent with regard to state court § 1983 actions. They contend that the legislative history and reasoning relied on by the Supreme Court in the *Patsy* opinion related only to federal court suits under § 1983. In the present case, we need not and do not reach this argument because there was no violation of any applicable state law primary jurisdiction or exhaustion requirement.

307 Md. 12–15, 511 A.2d 1079.

Apparently, as this quoted language indicates, the Court was not thoroughly convinced by our reasoning in *Crawford* that Congress intended that exhaustion of state administrative remedies should not be a prerequisite to bringing an action under § 1983 in state courts. We believe that this issue may be resolved by reference to the second, independent leg of the *Patsy* holding which involves the congressional intent in the enactment of 42 U.S.C. § 1997e.

Section 1997e, which is a component of the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 *et seq.* provides a mechanism whereby "courts" can stay a § 1983 action, filed by either a state or federal prisoner, for up to 90 days "in order to require exhaustion of such plain, speedy, and effective administrative remedies as are avail-

able," § 1997e(a)(1),[3] but such a stay is available only if the administrative remedy meets certain specific minimum standards listed in § 1997e relating to time constraints, fairness, etc.[4] The legislative history of this section indicates that Congress hoped to employ their Fourteenth Amendment powers through § 1997e to remove unnecessary burdens on the life and liberty of *State* prisoners by encouraging the States to "develop high quality grievance resolution systems ... [and thereby] encourage resolution of problems by the persons involved in the prison administration ... [in order to] develop a sensitivity that may have otherwise been lacking." S.Rep. No. 416, 96th Cong, *reprinted in* 1980 U.S.Code Cong. & Admin.News 787, 816.

The congressional intent to encourage State prison reforms is explicit and there can be little doubt that this policy would be hindered if the state courts were to require exhaustion of state administrative remedies which do not meet the minimum standards set by § 1997e. Therefore, in enacting § 1997e Congress must have intended that exhaus-

---

**3.** This section, in its present form, could not be used to stay a § 1983 proceeding in either state or federal courts pending state action under § 4–102.1(d). Section 1997e(b)(2) specifically requires that no continuance may be granted unless the court or the U.S. Attorney General makes a finding that administrative grievance procedures provide for "an advisory role for ... inmates ..."; § 4–102.1 makes no provision for such an advisory role.

**4.** Section 1997e(b)(2) states:
The minimum standards shall provide—
(A) for an advisory role for employees and inmates of any jail, prison, or other correctional institution (at the most decentralized level as is reasonably possible), in the formulation, implementation, and operation of the system;
(B) specific maximum time limits for written replies to grievances with reasons thereto at each decision level within the system;
(C) for priority processing of grievances which are of an emergency nature, including matters in which delay would subject the grievant to substantial risk of personal injury or other damages;
(D) for safeguards to avoid reprisals against any grievant or participant in the resolution of a grievance; and
(E) for independent review of the disposition of grievances, including alleged reprisals, by a person or other entity not under the direct supervision or direct control of the institution.

tion of State administrative procedures should not inhibit a § 1983 action, regardless of the forum (State or Federal), except where the administrative grievance procedure satisfies the strict § 1997e guidelines.[5]

Although this § 1983 action was brought in the State and not the Federal courts, we are required to enforce the congressional intent underlying § 1997e because "when an action is brought in a state court to enforce rights or claims under federal law, the Supremacy Clause of the United States Constitution requires that federal law and *policy* be applied by the state court." *County Exec., Prince Geo's County v. Doe,* 300 Md. 445, 454, 479 A.2d 352 (1984). Accordingly, we reaffirm our holding in *Crawford* that, regardless of the judicial forum, exhaustion of state administrative remedies is not a prerequisite to bringing an action under § 1983; the provisions of Art. 41 § 4–102.1(*1*) notwithstanding.[6] We qualify this holding by noting that exhaustion of the administrative procedures under a future version of Art. 41 § 4–102 might be required under 42 U.S.C. § 1997e if, at some point, that section is amended

---

**5.** Section 1997e was adopted as part of P.L. 96–247 which, according to the legislative discussions, was specifically intended to apply to actions filed in the federal courts. U.S.Code Cong. and Admin.News, pp. 787, 816. One might, therefore, erroneously conclude that § 1997e is intended to apply only to those § 1983 actions which are filed in federal courts. However, Congress's failure to specifically note during their debates the direct involvement of the state courts in the enforcement of P.L. 96–247 is understandable in light of the fact that the primary component of P.L. 96–247 is § 1997a which permits the U.S. Attorney General to institute proceedings in federal courts on behalf of institutionalized persons. § 1997a. Section 1997e, by contrast, specifically applies to actions filed under § 1983 by "the party injured," which actions can be filed in either state or federal courts.

**6.** Our holding is not intended to conflict with the statement of the Court of Appeals in *Crawford,* 307 Md. at 31, n. 14, 511 A.2d 1079, that:

... [W]here a plaintiff having an independent judicial remedy also elects to file a claim with the Commission on Human Relations, a court should require that the plaintiff exhaust his Commission remedies before the court addresses the merits of the independent action.

such that a court is able to conclude that the Maryland law complies with the minimum standards for inmate grievance procedures established by § 1997e.

### III

### *Constitutional Claim*
### (Count I)

█ The circuit court judge ruled, by way of granting the appellees' motion for summary judgment,[7] that Gunnell's conduct was insufficient to stand as the basis for a § 1983 suit. The court concluded that Gunnell's actions, as described in Earle's affidavit, amounted to mere negligence and, therefore, "did not approach the sort of abusive government conduct necessary to trigger the protection of the Due Process Clause." We agree.

---

7. The circuit court judge actually concluded that "Count I must be *dismissed* for failure to state a cause of action," however, we are compelled by Md. Rule 2–322 to treat the judge's ruling in this case as if it were one made upon a motion for summary judgment. Md. Rule 2–322 provides that:

     If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2–501, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 2–501.

   Md. Rule 2–322(c). In the case *sub judice,* the Court concluded that: Although Plaintiff's complaint alleges "willful and wanton violations of the prison's regulations," and "reckless conduct" by Defendant Gunnell, the facts indicate the officer was merely negligent in his conduct. Furthermore, when compared to the case of *Davidson v. Cannon,* the factual similarities of the cases make it clear that the behavior of Defendant Gunnell did not approach the sort of abusive government conduct necessary to trigger the protections of the Due Process Clause. *See Davidson* [*v. Cannon,* 474 U.S. 344] 106 S.Ct. [668] at 670 [88 L.Ed.2d 677 (1986) ]. Therefore, Count I must be dismissed for failure to state a cause of action.

   Because the record indicates that the circuit court did consider matters outside of the pleadings, such as Earle's affidavit filed in opposition to the motion for summary judgment, and otherwise considered this to have been a motion for summary judgment, we will review it as such, Rule 2–322, despite the court's insistence on referring to the matter as a motion to dismiss.

Maryland Rule 2–501(e), "Entry of [Summary] Judgment," states that:

> The court shall enter judgment in favor of or against the moving party if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

In reviewing the trial court's actions on such a motion:

> [W]e are concerned with whether there was a dispute as to any material fact and if not, whether the moving party was entitled to judgment as a matter of law. In considering the duly shown facts, all reasonable inferences deducible therefrom must be considered in a light most favorable to the party opposing the motion and against the party making the motion.

*Liscombe v. Potomac Edison Co.*, 303 Md. 619, 621, 495 A.2d 838 (1985). We apply this rule to the case *sub judice*.

### (a) The Facts

The evidence, taken in a light most favorable to appellant, is reflected in his affidavit which accompanied his response to the motion for summary judgment.

> On February 20, 1985, I was living in the locked-tier area at the Maryland Correctional Institute at Hagerstown. The locked-tier area consists of single and double cells only. I was located in a single cell for inmates who have requested either protective custody or administrative protective custody. Locked-tier inmates cannot work as sanitation workers in the locked-tier area. Inmate cells in the locked-tier area cannot be opened except at the request of the inmate actually living in the cell that is being opened. On February 20, 1985, contrary to the institution's rules and regulations, Lester T. Travers and Robert Sayers were working as sanitation workers in the locked-tier area where I was living and both were locked-tier inmates at that time. One of [the] two inmates told officer Robert Gunnell that they wanted to get a picture book

which was located in my cell. Gunnell, without asking me, opened my cell door and allowed Travers and Sayers to enter my cell. Travers and Sayers then rushed in and both stabbed me repeatedly.

Appellant also summarized what he alleges are the applicable prison regulations:

[P]rison ... regulations require that when the locked tier area needs sanitation workers that they must be obtained from outside the locked tier area. In addition, the prison's regulations require, in a locked tier area, that no inmate's cell door may be opened except at the request of he inmate assigned to the cell.

### (b) The Law

In *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Supreme Court held that:

[T]he Due Process Clause [8] of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property. In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required.

*Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986) (footnote added). The Court explained that "[w]e have previously rejected reasoning that 'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever system may already be administered by the States.' " 106 S.Ct. at 666 (citations omitted). The Court also quoted from Justice Stewart's concurring opinion in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981), to the effect that "[t]o hold that this kind of [negligently inflicted] loss is a deprivation of [life, liberty or] property within the meaning of the Fourteenth Amendment seems not only to trivialize, but grossly

---

**8.** The court added that "[w]e need not rule out the possibility that there are other constitutional provisions that would be violated by mere lack of due care...." 106 S.Ct. at 666.

to distort the meaning and intent of the Constitution." Finally, the Court noted that "this case affords us no occasion to consider whether something less than intentional conduct, such as recklessness or "gross negligence," is enough to trigger the protection of the Due Process Clause.[9] 106 S.Ct. at 667 n. 3. *But see Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983).

Appellant argues that summary judgement was improper in this case as a matter of law because, he claims, Gunnell's conduct rose above ordinary negligence to "recklessness", and recklessness, he contends, is sufficient to state a § 1983 claim. We need not entertain the question which the Supreme Court said it left open in *Daniels* (whether something less than an intentional act but greater than negligence is sufficient under § 1983) because we find that Gunnell's actions did not rise above ordinary negligence and Earle's claim was, therefore, barred by the rule in *Daniels.*

To explain our conclusion that Gunnell's actions did not rise above the level of "negligence" discussed in *Daniels,* it is first necessary to define the level of fault required by that case: which we shall refer to as "constitutional negligence." The Supreme Court instructs us that the appropriate place to search for such a definition is within the common law of torts:

> Section 1983 is derived from § 1 of the Civil Rights Act of 1871, 17 Stat. 13. It was intended to create "a species of tort liability" in favor of persons deprived of federally secured right. *Carey v. Piphus,* 435 U.S. 247, 253, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978); .... We noted in *Carey* that there was little in the section's legislative history concerning the damages recoverable for this tort liability, 435 U.S., at 255, 98 S.Ct., at 1048. In the

---

**9.** This claim under the Due Process Clause stands in comparison with similar claims under the Eighth Amendment wherein the Supreme Court has held that "deliberate indifference" to a prisoner's serious illness or injury is required to constitute cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

absence of more specific guidance, we looked first to the common law of torts (both modern and as of 1871), with such modification or adaptation as might be necessary to carry out the purpose and policy of the statute. *Id.,* 435 U.S., at 253–264, 98 S.Ct., at 1046–1052.

We turn then to Prosser and Keeton, *Law of Torts,* § 34 pp. 212–214 (5th ed. 1984) for a definition of "negligence" as that concept is applied by the majority of the states:

> Lying between intent to do harm, [ (which is sufficient to bring a § 1983 action) ] ... and the mere unreasonable risk of harm to another involved in ordinary negligence [ (which is insufficient to bring a § 1983 action) ], there is a penumbra of what has been called "quasi-intent." To this area the words "willful," "wanton," or "reckless," are customarily applied.... They have been grouped together as an aggravated form of negligence, differing in quality rather than in degree from ordinary lack of care.... They apply to conduct which is still, at essence, negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if it were so intended.
>
> . . . .
>
> The usual meaning assigned to "willful," "wanton," or "reckless," according to taste as to the words used, is that the actor has intentionally done an act of an unreasonable character in *disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow,* and which thus is usually accompanied by a conscious indifference to the consequences....
>
> The result is that "willful," "wanton," or "reckless" conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent.... It is at least clear, ... that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or inadvertence, or

simple inattention, even perhaps to the extent of falling asleep at the wheel of an automobile, or *even of an intentional omission to perform a statutory duty,* except in those cases where a reasonable person in the actor's place would have been aware of great danger, and proceeding in the face of it is so entirely unreasonable as to amount to aggravated negligence.

(emphasis added). (We note that this definition is in accord with the law of this State which defines "willful or wanton" conduct as that which is "extraordinary and outrageous," *Smith v. Gray Concrete Pipe Co.,* 267 Md. 149, 165–6, 297 A.2d 721 (1972); *Medina v. Meilhammer,* 62 Md.App. 239, 248–251, 489 A.2d 35 (1985) (quoting Prosser and Keeton, *Law of Torts* ), *cert. denied,* 303 Md. 683, 496 A.2d 683 (1985); *Mech v. Hearst,* 64 Md.App. 422, 428–429, 496 A.2d 1099 (1985), *cert. denied,* 305 Md. 175, 501 A.2d 1323 (1986), "utter disregard for the rights of others." *Baltimore Transit Co. v. Faulkner,* 179 Md. 598, 20 A.2d 485 (1941).)

There is no question that, under the definition of negligence provided by Prosser and Keeton, Gunnell was negligent in allowing Travers and Sayers to enter Earle's cell. However, there is no evidence that he did so with constitutional negligence—characterized by a "quasi-intent," Prosser and Keeton, *Law of Torts,* at 212, in "disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow," *id.* at 213—and the mere allegations in Earle's complaint that Gunnell's actions were "willful" and "wanton" are insufficient to satisfy this standard, *see Foor v. Juvenile Services,* 78 Md.App. 151, 170, 552 A.2d 947 (1989). In constitutional terms, Gunnell's actions simply do not amount to an "arbitrary exercise of the power of the government," *Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 116, 28 L.Ed. 232 (1884); *see also Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974), which ought to incur the constitutional protection of the Fourteenth Amendment as enforced through § 1983. To hold otherwise would, as Justice Stewart warned, "trivialize ... [and] grossly distort

the meaning and intent of the Constitution." 101 S.Ct. at 1917.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR WASHINGTON COUNTY FOR ENTRY OF AN ORDER CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID THREE–FOURTHS BY APPELLANT AND ONE–FOURTH BY APPELLEES.