CAROL BROZOVSKY, APPELLANT, V. DEAN G. NORQUEST, APPELLEE.
DEAN G. NORQUEST AND GRACE E. NORQUEST, APPELLEES, V.
CAROL BROZOVSKY, APPELLANT.

437 N.W.2d 798

Filed April 7, 1989.   Nos. 87-476, 87-477.

Lyle Joseph Koenig for appellant.

John C. Hahn, of Jeffrey, Hahn, Hemmerling & Wade, P.C., for appellees.

BOSLAUGH, SHANAHAN, and GRANT, JJ., and KNAPP and ROWLANDS, D. JJ.

BOSLAUGH, J.

These cases arise out of a controversy between Carol Brozovsky and Dean G. Norquest concerning the division and distribution of the assets of C.E. Norquest & Sons, Inc. Brozovsky was married to Clayton Norquest, who was a brother of Dean Norquest and who died in 1982.

On May 4, 1982, Brozovsky and Dean Norquest executed a detailed written agreement providing for the division of the assets of the corporation. At that time, Brozovsky was represented by Wallace W. Angle, and Norquest was represented by Ray L. Svehla. The agreement was approved by both counsel.

The agreement recited that the parties were the sole and equal shareholders of the corporation and provided for the division of both real and personal property and the assumption of

indebtedness.

Case No. 87-476 is an action commenced by Brozovsky to obtain a declaratory judgment as to the right of Dean Norquest to use a reuse pit located on land she received under the agreement, for partition of the pump located in the reuse pit, and for an accounting as to rent due her from Norquest for his use of her property.

Case No. 87-477 is an action commenced by Dean Norquest and Grace E. Norquest against Brozovsky for damages the plaintiffs alleged they sustained because of Brozovsky's failure to comply with the terms of the May 4, 1982, agreement. The plaintiffs allege that Brozovsky was to assume an indebtedness of $121,900 on land Dean Norquest received under the agreement and that as a result of her failure to assume the debt and make the mortgage payments, the Federal Land Bank of Omaha commenced an action to foreclose the mortgage. On April 29, 1987, the plaintiffs in case No. 87-477 filed "Proposed Deposition Questions to Wallace W. Angle" and filed the same document in case No. 87-476 on May 1, 1987. "Objections to Deposition Questions" were filed in case No. 87-477 on May 5, 1987. The objections alleged that a lawyer-client relationship existed between Angle and Brozovsky, that the proposed deposition questions sought to discover privileged information, and that Brozovsky claimed the privilege provided by Neb. Rev. Stat. § 27-503(3) (Reissue 1985).

On May 5, 1987, the objections filed by Brozovsky and a request for a protective order filed that day were heard and submitted to the trial court.

On May 15, 1987, the plaintiffs in case No. 87-477 filed a notice to take the deposition of Angle and a praecipe for a subpoena duces tecum for Angle. A subpoena was issued the same day.

On May 19, 1987, the trial court found that by pleading the "agreement upon which the action is based," Brozovsky had waived the attorney-client privilege. Angle was directed to testify and make himself available for the deposition. Brozovsky then filed a notice of appeal in each case.

The first matter that must be determined is whether there is a final order in either case from which an appeal could be taken.

Except in a very few situations where a special statute provides otherwise, the appellate jurisdiction of this court is limited to a review of final orders.

In *Lake v. Piper, Jaffray & Hopwood Inc.*, 212 Neb. 570, 573-74, 324 N.W.2d 660, 662 (1982), we said:

> It has long been the rule in this state that the Supreme Court has jurisdiction only to hear appeals from final orders. Neb. Rev. Stat. § 25-1911 (Reissue 1979). A final order is defined in Neb. Rev. Stat. § 25-1902 (Reissue 1979) as "[a]n order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment . . . ."

In *Anson v. Kruse*, 147 Neb. 989, 990, 25 N.W.2d 896, 897 (1947), this court construed § 25-1902 as follows:

> " 'A decree to be final must dispose of the whole merits of the case, and leave nothing for the further consideration of the court. An order is final when it affects a substantial right and determines the action. . . . When no further action of the court is required to dispose of the cause pending, it is final; when the cause is retained for further action, as in this case, it is interlocutory.' "

When a substantial right is undetermined and the cause is retained for further action, the order is not final. *Martin v. Zweygardt*, 199 Neb. 770, 261 N.W.2d 379 (1978).

In the absence of a final order from which an appeal may be taken, the appeal must be dismissed for lack of jurisdiction.

In *Matter of Bartow*, 101 N.M. 532, 685 P.2d 387 (1984), the appeal was from the trial court's denial of a request for a protective order. The court held:

> As a general rule an order granting or denying a motion for protective order is not a final judgment or decision for purposes of appeal. . . .
>
> Orders granting or denying a motion for protective order, like orders requiring or denying discovery, or orders requiring a party to submit to a physical or mental examination, generally do not constitute a final disposition of the proceedings. Therefore, they are not

normally appealable, except upon the granting of an interlocutory appeal.
(Citations omitted.) *Id.* at 534, 685 P.2d at 389. See, also, *Bartschi v. Chico Community Memorial Hosp.*, 137 Cal. App. 3d 502, 187 Cal. Rptr. 61 (1982); *Breuer v. Flynn*, 64 Md. App. 409, 496 A.2d 695 (1985).

In 8 C. Wright & A. Miller, Federal Practice and Procedure § 2006 at 29-30, 33-36 (1970), the general rules applicable to discovery orders are stated as follows:

A discovery order, as such, is normally merely an interlocutory order in the course of proceedings and is not appealable. . . .

Ordinarily an order regarding discovery against a person not a party to the action is not appealable. The order is interlocutory insofar as it affects the party seeking discovery. It is final so far as the nonparty is concerned but if discovery is denied he has no need for review and if discovery is granted it is said that his remedy is to defy the order and appeal from a contempt judgment against him.
. . .

. . . .

If a party is found guilty of criminal contempt for failure to comply with a discovery order, that is a separate proceeding and the contempt judgment is immediately appealable. If the party is held to be in civil contempt review must await final judgment, although it must be said that there are famous cases in which this distinction may have been overlooked. Some of the sanctions in addition to contempt that may be imposed under Rule 37 are final orders and are appealable as such. If an appeal lies from a contempt order or other sanction, the appellate court will consider whether the discovery order that led to the sanction was proper.

A discovery order can always be reviewed on appeal from a final judgment in the case, even though it is difficult at that stage to show that the party has been prejudiced by the order, or that the question is not moot, and the harmless error doctrine, together with the broad discretion the discovery rules vest in the trial court, will

bar reversal save under very unusual circumstances. This is especially true when the order has granted discovery, since there is no effective means of correcting such an order once the discovery has been had. Reversal is more likely, although still unusual, when the trial court has erroneously denied or limited discovery.

In *Childs v. Kaplan*, 467 F.2d 628 (8th Cir. 1972), two judgment debtors attempted to appeal from an order requiring them to answer interrogatories regarding their assets. In holding the order not appealable the court said:

> The threshold issue presented by these appeals is whether the order appealed from is an appealable order. . . .
>
> . . . .
>
> The judgment appealed from is not a final judgment. . . .
>
> . . . The court, after considering the briefs submitted by the parties, entered the order appealed from requiring defendants to answer the interrogatories. In making such order, the court made the finding "there is nothing in the interrogatories which in the opinion of the court would tend to incriminate the defendants by answering the interrogatories." In our view, such order does not constitute a final order.
>
> The question of what sanctions, if any, should be imposed remains open. Defendants still have an opportunity in a proceeding to find them in contempt of court for failure to obey the order or in an application for a protective order to show that answers to the interrogatories will in fact tend to violate their Fifth Amendment rights under the standards set out in Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

In United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971), the Court held that an order denying a motion to quash a subpoena was not a final appealable order. The Court states: "We think that respondent's assertion misapprehends the thrust of our cases. Of course, if he complies with the subpoena he will

not thereafter be able to undo the substantial effort he has exerted in order to comply. But compliance is not the only course open to respondent. If, as he claims, the subpoena is unduly burdensome or otherwise unlawful, he may refuse to comply and litigate those questions in the event that contempt or similar proceedings are brought against him. Should his contentions be rejected at that time by the trial court, they will then be ripe for appellate review. But we have consistently held that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistance to that order with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal. Cobbledick v. United States, *supra* [309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783]; Alexander v. United States, 201 U.S. 117 [26 S.Ct. 356, 50 L.Ed. 686] (1906); cf. United States v. Blue, 384 U.S. 251, [86 S.Ct. 1416, 16 L.Ed.2d 510] (1966); DiBella v. United States, 369 U.S. 121, [82 S.Ct. 654, 7 L.Ed.2d 614] (1962); Carroll v. United States, 354 U.S. 394, [77 S.Ct. 1332, 1 L.Ed.2d 1442] (1957). Only in the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims have we allowed exceptions to this principle. . . ." 402 U.S. 530, 532-533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85.

While the proceeding in the case before us is distinguishable in that it involves a civil case rather than a criminal case, we believe the reasoning of Ryan and the cases cited therein applies to our present situation. Interlocutory appeals in civil cases will place an undue burden on the courts and delay the ultimate disposition of the litigation. Borden Co. v. Sylk, 410 F.2d 843 (3rd Cir. 1969), presents a sound basis for the dismissal of the appeal in our present case for want of jurisdiction by reason of lack of finality of the order appealed from.

The appeal is dismissed for want of jurisdiction.

467 F.2d at 629-30.

In *Hudak v. Curators of University of Missouri*, 586 F.2d 105 (8th Cir. 1978), the court held that orders sustaining objections to interrogatories and requiring the return of exhibits after the trial were not final orders which could be appealed. The court said at 106:

> She appeals the denial of counsel, various orders sustaining defendant's objections to certain of her interrogatories and a protective order providing that she return to defendants certain exhibits after their use in the trial and not use them in other cases.
>
> The latter two rulings relate to conduct of the trial and to discovery matters, and as such are not appealable as final decisions under 28 U.S.C. § 1291. *See Grinnell Corp. v. Hackett*, 519 F.2d 595 (1st Cir.), *cert. denied sub nom. Chamber of Commerce v. United Steelworkers*, 423 U.S. 1033, 96 S.Ct. 566, 46 L.Ed.2d 407 (1975); *Gialde v. Time, Inc.*, 480 F.2d 1295 (8th Cir. 1973); *Childs v. Kaplan*, 467 F.2d 628 (8th Cir. 1972).

In *Xerox Corp. v. SCM Corp.*, 534 F.2d 1031 (2d Cir. 1976), Xerox attempted to appeal from discovery orders on the ground that the information sought was privileged from disclosure by the attorney-client privilege. The court said at 1031-32:

> In recent years we have repeatedly sought to make clear that in the absence of a certification pursuant to 28 U.S.C. § 1292(b) or of a showing of "persistent disregard of the Rules of Civil Procedure," *Will v. United States*, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305, 310 (1967), or of "a manifest abuse of discretion," *Baker v. United States Steel Corp.*, 492 F.2d 1074, 1077 (2d Cir. 1974), on the part of the district court, no jurisdictional basis exists for interlocutory review of pretrial discovery orders of the type here presented.

(Citations omitted.)

In *Grinnell Corporation v. Hackett*, 519 F.2d 595 (1st Cir. 1975), the court held that a discovery order was not appealable, although the appellant claimed the information sought was protected by the Constitution. The court said at 598:

The basis for the order was that the information sought was "highly relevant" and that the Chamber had waived its first amendment protection by putting harm to its members in issue in the suit. Whether these decisions were right or wrong, they do not present the important question the Chamber asserts.

. . . Here, the Chamber has not shot the last arrow in its quiver, since it can refuse to comply and seek review from the sanction, if any, imposed for that refusal. . . . The Supreme Court has recently styled it "a familiar procedure" to advise one's client "to resist and risk a contempt citation, thereby allowing precompliance appellate review." *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584, 593, 42 L.Ed.2d 574 (1975). And earlier cases echo the same theme. . . . If we treat these cases as providing guidance regarding the content of the urgency standard, they suggest that the Chamber's claim that review must be afforded now lest meaningful review be forever lost must fail absent a contempt adjudication.

The Chamber could secure review of a criminal contempt finding. *See Union Tool Co. v. Wilson*, 259 U.S. 107, 111, 42 S.Ct. 427, 66 L.Ed. 848 (1922). If the district court certified it as final under Fed.R.Civ.P. 54(b), the Chamber could also appeal immediately from an order dismissing its complaint as the sanction for noncompliance.

The rationale for the rule was stated by the U.S. Supreme Court in *Cobbledick v. United States*, 309 U.S. 323, 324-25, 60 S. Ct. 540, 84 L. Ed. 783 (1940), as follows:

The question is whether an order denying a motion to quash a subpoena *duces tecum* directing a witness to appear before a grand jury is included within those "final decisions" in the district court which alone the circuit courts of appeal are authorized to review by § 128 (a) of the Judicial Code (28 U.S.C. § 225).

Finality as a condition of review is an historic characteristic of federal appellate procedure. It was written into the first Judiciary Act and has been departed from only when observance of it would practically defeat

the right to any review at all. Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. To be effective, judicial administration must not be leaden-footed. Its momentum would be arrested by permitting separate reviews of the component elements in a unified cause.

Quoting from *Alexander v. United States*, 201 U.S. 117, 26 S. Ct. 356, 50 L. Ed. 686 (1906), the Court said:

"In a certain sense finality can be asserted of the orders under review, so, in a certain sense, finality can be asserted of any order of a court. And such an order may coerce a witness, leaving to him no alternative but to obey or be punished. It may have the effect and the same characteristic of finality as the orders under review, but from such a ruling it will not be contended there is an appeal. Let the court go further and punish the witness for contempt of its order, then arrives a right of review, and this is adequate for his protection without unduly impeding the progress of the case. . . . This power to punish being exercised the matter becomes personal to the witness and a judgment as to him. Prior to that the proceedings are interlocutory in the original suit." 201 U. S. at 121-122.

309 U.S. at 327.

We conclude that the orders appealed from in these cases were interlocutory. The appeals must, therefore, be dismissed.

APPEALS DISMISSED.