927 A.2d 445

**Melvin James DIXON**

v.

**DEPARTMENT OF PUBLIC SAFETY AND
CORRECTIONAL SERVICES.**

No. 1107, Sept. Term, 2006.

Court of Special Appeals of Maryland.

July 5, 2007.

386

James G. Beach, III, Towson, for appellant.

Steven G. Hildenbrand (Douglas F. Gansler, Atty. Gen., on brief), for appellee.

Panel HOLLANDER, BARBERA and CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

HOLLANDER, J.

Melvin James Dixon, appellant, was seriously injured on May 4, 2004, when he fell into a ventilation shaft while on a prison work detail at the Maryland House of Correction in Jessup, a Division of Correction ("DOC") facility operated by the Department of Public Safety and Correctional Services (the "Department"), appellee. To recover for the injuries he suffered, Dixon filed a tort suit in October 2004 against the Department and M & M Welding and Fabricators, Inc. ("M & M"), a company doing work under contract with the Department.[1]

The Department and M & M filed motions for summary judgment. On August 29, 2005, the Circuit Court for Anne Arundel County dismissed the suit as to M & M, with prejudice. However, the court denied appellee's motion. Then, in an order entered on June 29, 2006, the court granted the Department's motion in limine to exclude all evidence in support of appellant's claim, and also granted its renewed motion for summary judgment. The court determined that, under Maryland Code (1999, 2006 Supp.), § 10–308(c) of the Correctional Services Article ("C.S."), appellant was only entitled to pursue his claim for compensation against the Sundry Claims Board (the "Sundry Board" or "Board").

Appellant poses two questions on appeal, which we quote:

1. Is the Sundry Claims Board the exclusive remedy by which a prison inmate can seek compensation for serious personal injuries caused by the negligence of the prison staff and of a private contractor employed by the prison? [2]

2. Did the Trial Court err when it granted the Defendant's Motion in Limine on the morning of trial, thereby

---

1. In his Complaint, appellant sued "M & M Welding & Fabrication, Inc." At a motions hearing, counsel for M & M indicated that the name is "M & M Welding and Fabricators, Inc."

2. Notwithstanding appellant's question, which seems to refer to a claim against M & M, appellant's brief does not address any claim against the contractor.

overruling two prior decisions of the same Court, both of which denied the Defendant the exact relief it sought in its Motion in Limine?

For the reasons that follow, we shall affirm.

## I. STATUTORY SCHEME

To understand the facts and issues, we begin with a review of the relevant statutory schemes.

Title 10 ("State Correctional Facilities"), Subtitle 3 ("Sundry Claims Board") of the Correctional Services Article governs the procedure for the filing of a claim by a DOC inmate to recover for work-related injuries sustained while incarcerated. Article 10, Subtitle 3 provides, in part:

### § 10–301. Definitions.

(a) *In general.*—In this subtitle the following words have the meanings indicated.

(b) *Board.*—"Board" means the Sundry Claims Board.

(c) *Permanent partial disability.*—"Permanent partial disability" has the same meaning given under Title 9, Subtitle 6, Part IV of the Labor and Employment Article.

(d) *Permanent total disability.*—"Permanent total disability" has the same meaning given under Title 9, Subtitle 6, Part V of the Labor and Employment Article.

### § 10–302. Established.

There is a Sundry Claims Board in the Department.

### § 10–304. Administration of benefits.

*The Board shall administer benefits* as provided under this subtitle *to an individual* who, while an inmate in the Patuxent Institution, the Baltimore City Detention Center, or a correctional facility in the Division of Correction:

(1) was engaged in work for which wages or a stipulated sum of money was paid by a correctional facility; and

(2) *sustained a permanent partial disability or permanent total disability:*

(i) *as a result of a personal injury arising out of and in the course of work for which wages or a stipulated sum of money was paid by a correctional facility; and*

(ii) that incapacitated the individual or materially reduced the individual's earning power in that type of work.

(Emphasis added.)

### § 10–305. Filing a claim.

(a) *Right to file.—(1) An injured inmate may file a claim for compensation against the State under this subtitle with the Board.*

(2) The Board may receive original papers representing a claim even if the State has not appropriated money to pay the claim.

(b) *Time to file.*—An injured inmate shall file a claim with the Board by the later of:

(1) 12 months after being released from the correctional facility; or

(2) 24 months after the date of injury.

(c) *Record keeping.*—The Board shall file and properly designate each claim by number, short title, or both.

(Emphasis added.) [3]

### § 10–308. Claim payments.

(a) *Determination of compensation.*—In determining what compensation, if any, to allow a claimant, the Board shall consider:

(1) the good faith of the claimant;

(2) the possibility that the alleged injury was self-inflicted or not accidental;

(3) the extent and nature of the injury;

(4) the degree of disability;

(5) the period of disability or incapacity for other work; and

---

**3.** We need not quote C.S. § 10–307, which pertains to the investigation and disposition of claims filed with the Board.

(6) the ordinary earning power of the claimant.

(b) *Governor to include money in the State budget.*—(1) The Governor shall include money to pay a claim that is approved by the Board in the State budget for the fiscal year that follows the fiscal year in which the Board approves the claim.

(2) The Board shall pay to the claimant or the claimant's representative any compensation approved by the Board and included in the State budget.

(c) *Exclusive remedy.*—*The compensation authorized under this subtitle is the exclusive remedy against the State for a claim that falls within the jurisdiction of the Board....*

(Emphasis added.)

## § 10–309. Judicial review.

(a) *Right to judicial review by claimant.*—(1) A claimant aggrieved by a final determination of the Board may file a petition for judicial review in the circuit court of the county where the injury occurred or where the claimant resides.

(2) The Board may be a party to the action.

(b) *Decision by circuit court.*—The circuit court may:

(1) affirm the Board's determination;

(2) reverse or modify a determination it finds to be arbitrary or unreasonable; or

(3) remand the case and direct the Board to consider the matter further or make additional findings of fact.

(c) *Appeal to Court of Special Appeals.*—The claimant or the Board may appeal a decision of the circuit court to the Court of Special Appeals.

The Prisoner Litigation Act ("PLA") is codified in Title 5, Subtitle 10 of the Courts and Judicial Proceedings Article ("C.J.") of the Maryland Code (2006 Repl.Vol.). It governs the filing of civil actions by prisoners. C.J. § 5–1001 provides, in part:

## § 5–1001. Definitions.

\* \* \*

(b) *Administrative remedy.*—(1) "Administrative remedy" means any procedure for review of a prisoner's complaint or grievance, including judicial review, if available, that is provided by the Department, the Division of Correction, or any county or other municipality or political subdivision, and results in a written determination or disposition.

(2) "Administrative remedy" includes a proceeding under Title 10, Subtitle 2 of the State Government Article or Title 10, Subtitle 2 of the Correctional Services Article.

\* \* \*

(d) *Conditions of confinement.*—"Conditions of confinement" means any circumstance, situation or event that involves a prisoner's custody, transportation, incarceration, or supervision.

C.J. § 5–1003 states:

## § 5–1003. Exhaustion of administrative remedies.

(a) *In general.*—(1) A prisoner may not maintain a civil action until the prisoner has fully exhausted all administrative remedies for resolving the complaint or grievance.

(2) Except as provided in paragraph (3) of this subsection, an administrative remedy is exhausted when the prisoner has pursued to completion all appropriate proceedings for appeal of the administrative disposition, including any available proceedings for judicial review.

(3) Judicial review following administrative consideration shall be the exclusive judicial remedy for any grievance or complaint within the scope of the administrative process, unless the prisoner's complaint or grievance was found to be meritorious and monetary damages were not available through the administrative remedy available to the prisoner.

(b) *Proof.*—(1) When a prisoner files a civil action, the prisoner shall attach to the initial complaint proof that administrative remedies have been exhausted.

(2) The attachment shall include proof:

(i) That the prisoner has filed a complaint or grievance with the appropriate agency;

(ii) Of the administrative disposition of the complaint or grievance; and

(iii) That the prisoner has appealed the administrative disposition to the appropriate authority, including proof of judicial review, if available.

(3) On receipt of a prisoner's initial complaint that does not have attached to it proof that the prisoner has fully exhausted the administrative remedies available, the court shall dismiss the case without prejudice and grant the prisoner reasonable leave to amend the complaint and to provide the proof necessary to demonstrate that the prisoner has fully exhausted the administrative remedies.

(c) *Dismissal.*—A court shall dismiss a civil action if the prisoner filing the action has not completely exhausted the administrative remedies.

In turn, C.S. Title 10, Subtitle 2, referred to in the PLA, pertains to the "Inmate Grievance Office" ("IGO"). C.S. § 10–206 provides:

**§ 10–206. Submission of complaint to Inmate Grievance Office.**

(a) *Authorized.*—Subject to subsection (b) of this section, if an individual confined in a correctional facility in the Division of Correction, otherwise in the custody of the Commissioner of Correction, or confined in the Patuxent Institution has a grievance against an official or employee of the Division of Correction or the Patuxent Institution, the individual may submit a complaint to the Office within the time and in the manner required by regulations adopted by the Office.

(b) *Exhaustion of remedies.*—If the Division of Correction or the Patuxent Institution has a grievance procedure applicable to the particular grievance of an individual described in subsection (a) of this section and the Office considers the procedure to be reasonable and fair, the

Office, by regulation, may require that the procedure be exhausted before submission of a complaint to the Office.

C.S. §§ 10–207 and 10–208 govern hearings conducted by the Office of Administrative Hearings in regard to complaints that are "not found to be wholly lacking in merit on [their] face...." C.S. § 10–210(a) states:

§ 10–210. Judicial review.

(a) *Exhaustion of remedies.*—A court may not consider an individual's grievance that is within the jurisdiction of the Office or the Office of Administrative Hearings unless the individual has exhausted the remedies provided in this subtitle.

## II. FACTUAL SUMMARY

On August 19, 2004, appellant, through counsel, filed with the Sundry Board a form captioned "Claim for Compensation," seeking to recover "for an injury resulting in [his] disability[.]" Dixon indicated that, on May 4, 2004, he sustained injuries "arising out of and in the course of his employment," while he was on a prison work detail in the Pre–Release Unit of the Maryland House of Correction. Appellant averred that he "fell feet first into a ventilator shaft on the prison grounds." As a result, he "shattered" both ankles, broke the tibia and fibula bones in both of his legs, and also broke several ribs. According to appellant, he was unable to work as a result of his injuries, which he characterized as "[p]ermanent." At the time of the accident, appellant earned "$.90" per day as compensation for his work.

The Sundry Board acknowledged receipt of appellant's claim in a letter dated September 1, 2004. It also notified appellant that a hearing would be scheduled in regard to the matter.

On October 22, 2004, while appellant's claim was pending with the Sundry Board, appellant filed his "Complaint" in the circuit court against the Department and M & M. He alleged that, at the time of his accident, M & M was performing services for the Department "under contract." He asserted

that M & M "was conducting maintenance work on the large ventilator shafts, the openings for which were located in the area where [appellant] was working." Further, appellant alleged that his injuries were proximately caused by the negligence of individuals employed by the Department and M & M, for which he sought damages of $500,000. In particular, appellant alleged:

15) When work had been completed at the end of the day on May 4th, 2004, [appellant] and another inmate were directed by an employee of the Department to pick up and move one of the large fans which had been used during that day to pump hot air out of the ventilation shaft.

16) [Appellant] and the other inmate lifted the fan and as [appellant] took the first step toward carrying the fan back to a truck as directed by employees of the House of Correction, he was caused to fall straight down into an open ventilation shaft.

\* \* \*

18) Prior to being told to pick up and move the ventilation fans, neither [appellant] nor the other inmate was ever told, either by employees of the Department or by employees of M & M that the ventilation shaft directly under the fan did not have the proper cover in place.

19) As a result, [appellant] had no way of knowing that when he lifted the fan, he was, in effect, lifting the cover off of the ventilation shaft into which he ultimately fell.

Both M & M and the Department filed motions for summary judgment.[4] In its memorandum of law, the Department argued that, because appellant "was injured while engaged in work for which wages or a stipulated sum of money was paid by DOC," and because appellant alleges "permanent injuries," his "exclusive remedy against the ... Department ... is the compensation authorized by the Sundry Claims statutes and regulations." (Citation omitted.) The Department explained that appellant satisfied "the statutory criteria [under C.S.

---

4. M & M's motion is not germane to this appeal.

§ 10–304] to be eligible to file a claim" with the Sundry Board; therefore, under C.S. § 10–308(c), he was limited to seeking a remedy from that Board. Appellee added that because the statute provided for an "exclusive remedy for compensation," the circuit court had "no jurisdiction" to consider appellant's tort action against the Department.

In his response, appellant acknowledged that he initially "filed a claim for medical reimbursement with the Board." Moreover, Mr. Dixon maintained that he "has suffered and will continue to suffer pain, permanent impairment, loss of earning capacity and other non-economic damages." In his view, however, C.S. § 10–308 did not provide compensation for "the non-economic aspects of an injured inmate's claim." Although appellant conceded that C.S. § 10–308(c) provides an exclusive remedy "for claims which fall within the jurisdiction of the Board," he argued that there had "been no determination" by the Board that his claim fell within the Board's jurisdiction.

The Board scheduled a hearing on appellant's claim for June 17, 2005. However, neither appellant nor his lawyer appeared on that date. The circuit court's record includes a letter to the Sundry Board, dated July 15, 2005, in which appellant's counsel informed the Board that "[i]t was [his] intention to dismiss this [administrative] claim prior to the hearing date." Appellant's counsel did not advise the Board of the pending tort suit, however.

By order dated July 20, 2005, the Sundry Board "denied and dismissed" appellant's claim for compensation. The order indicated that a hearing had been scheduled for June 17, 2005; that appellant and his counsel had been advised of the "date, time and location" in a letter mailed on May 12, 2005; and neither appellant nor his counsel appeared for the scheduled hearing. Further, the order indicated that the Board had attempted to contact appellant's counsel, but "[n]o return call was received; nor was there any other communication received from either [appellant] or his attorney." Therefore, the Board "presumed that [appellant] had abandoned his case,"

and concluded that the claim was "moot." To our knowledge, appellant did not challenge that ruling.

On July 28, 2005, the Department filed a "Supplemental Memorandum of Points and Authorities" in support of its motion for summary judgment, advising of the Sundry Board's dismissal of appellant's claim. It attached the administrative order as well as appellant's letter to the Board of July 15, 2005. In addition, the Department claimed that appellant's responses to the Department's requests for admissions "show[ed] that [appellant's] claim filed with the Sundry Claims Board satisfied the statutory jurisdictional requirements of the Board."

In particular, the Department referred the court to the Department's "Request for Admission No. 7," which appellant admitted. It stated:

*Request for Admission No. 7:*

On May 4, 2004 at the time [appellant] was injured, [appellant] was an inmate at a correctional facility of the Division of Correction engaged in work for which [appellant] was receiving wages of a stipulated sum of money at the rate of ninety cents ($0.90) a day paid by the Division of Correction correctional facility, that [appellant] sustained a permanent disability as a result of personal injuries arising out of and in the course of work for which wages or a stipulated sum of money was paid by the Division of Correction correctional facility, that [appellant's] injuries incapacitated [appellant] and that [appellant's] injuries were accidental.

Moreover, the Department reiterated that C.S. § 10–308(c) provided appellant's sole remedy to obtain compensation from the Department for his injuries. It posited: "The purpose of § 10–308(c) was to create an exclusive monetary benefits program for such injured inmates." The Department further explained that the "intended result" of the statute "was to provide inmates with some limited work experience," while also "limit[ing] . . . the State's financial compensatory exposure for inmates injured while so working."

In a related contention, the Department argued that appellant failed to exhaust his administrative remedies under the PLA. Citing C.J. § 5–1003(a)(1) and (b)(1), the Department asserted: "A prisoner, before he or she files a civil action, must fully exhaust all administrative remedies for resolving their complaint or grievance ... and must attach to the complaint in the civil action proof that the remedies have been exhausted."

Moreover, the Department asserted: "Administrative remedies which must be exhausted under the PLA specifically include those available under the IGO procedure...." The Department referred to C.S. § 10–206, asserting that "a person confined to an institution of the Division of Correction who has a grievance or complaint against an official or employee of the Division or the Patuxent Institution may submit the grievance to the Inmate Grievance Office." According to the Department, "a court *may not* consider an inmate's grievance that is within the jurisdiction of the IGO unless the inmate has exhausted the remedies provided in the subtitle governing the IGO." *See* C.S. § 10–210(a). (Emphasis in original.)

In sum, the Department maintained that appellant "failed to exhaust his administrative remedies by voluntarily abandoning and dismissing his claim filed with the Sundry Claims Board." It also maintained that because the Complaint "purport[ed] to state a claim, by [appellant] as a prisoner, for damages allegedly resulting from the negligent acts of Division of Correction employees," appellant's claim fell "within the jurisdiction of the IGO, and, under the PLA, [appellant] was required to exhaust his remedy available in that forum, *including judicial review.*" (Emphasis in original.) According to the Department, appellant's "explanation that he was not presented with or given information about a grievance procedure to pursue about his injuries does not constitute an exception to the PLA's exhaustion requirement." [5]

---

5. Further, the Department contended that, even if appellant prevailed in circuit court, he "would be entitled to a judgment against the Department not exceeding $200,000, due to the current statutory cap

In his opposition, appellant asserted: "He did not have to exhaust any administrative remedies prior to filing his Complaint in this Court." As to the Sundry Board, appellant disputed the Department's contention that, under C.S. § 10–308(c), filing a claim with the Board was his exclusive remedy. Although Dixon conceded that the statute had been amended to include "an exclusivity provision," he maintained that "the original intent of the legislation was to provide monetary benefits to those inmates who were working at a job other than their assigned task within a correctional facility[.]"

Moreover, citing C.S. § 10–305(a), Dixon argued that the administrative process was optional, not mandatory, because "the legislature has decreed that an injured inmate *may* file a claim for compensation against the State under this subtitle with the Board." (Emphasis in original.) Thus, argued appellant, "an injured inmate does not have to file a claim with the Sundry Claims Board." He insisted that, if an "injured inmate . . . chooses not to submit himself to the jurisdiction of the Sundry Claims Board . . . he is free to pursue other avenues of redress for his injuries." Appellant continued: "If every inmate were forced to file a claim with the Sundry Claims Board for any injury received while working in a correctional institution, an entire segment of the population would be disenfranchised from access to the Court system." To illustrate, noted Dixon, "an individual who is working and who is injured and who files a workers' compensation claim, still has the right to pursue, through the Courts, any third party who may have been involved in causing the injury." Thus, appellant claimed: "An inmate must have the right, even in light of the Sundry Claims Board statute, to elect to file suit in the Circuit Court for damages."

Further, appellant pointed out that he "was ordered by prison personnel to file a claim with the Sundry Claims Board

---

. . . on damages in tort cases such as this." (Citation omitted.) Accordingly, the Department asserted that it was entitled to partial summary judgment "by limiting any judgment" against the Department "to an amount not exceeding $200,000.00." The amount of potential recovery is not an issue on appeal.

when he was injured." He maintained that because his "claim [with the Board] was dismissed prior to adjudication ... the exclusivity provision did not attach to him." He asked the court to "determine his status as though his claim had never been filed," and to "find that [appellant was] free to pursue the ... case to its conclusion." Dixon stated:

> The exclusivity provision contained in Section 10–308(c) is tolled if, and only if, an injured inmate files a claim with the Board, thereby submitting himself to its jurisdiction and is awarded compensation. In short, if an injured inmate is paid by the Board, this case is over and he cannot go any further in pursuit of any monetary damages. However, the converse of that proposition is also true. That is, if an inmate chooses not to file a claim with the Board, which is his right, under the statute, the exclusivity provision does not apply. If no claim is filed or if the claim is dismissed before compensation is paid, the Board is divested of jurisdiction.

Referring to C.S. § 10–308(b), appellant also argued:

> It seems clear that the legislature did not expect that there would be a large number of claims filed with the Sundry Claims Board. In subsection (b) the legislature chose not to even fund the Board. In that rare occasion when an award of compensation is determined to be appropriate, then and only then, does the[ ] Governor need to include money in the next year's budget to pay the claim. Obviously, an onslaught of compensable claims was not contemplated when this statute was enacted.

In addition, appellant maintained that "the Department's reliance upon the PLA is misplaced," because it "should not be construed to require an inmate such as Mr. Dixon, who is injured by the negligence of employees of the Department, to follow or to exhaust any administrative remedies prior to filing his Circuit Court complaint for damages." According to appellant, because he "was not complaining about anything having to do with his conditions of confinement," as that term is defined in C.J. § 5–1001(d) of the PLA, that statute was inapplicable.

In support of his contention that the IGO grievance procedure did not apply to his negligence claims, appellant posited that the IGO "was not created, nor is it in existence, to address an inmate's bodily injuries caused by the negligence of the Department of Corrections." Instead, argued appellant, the IGO was "designed to redress internal grievances against officials or employees of the DOC." Dixon added: "It is only when an inmate is alleging deprivation of some constitution[al] or legal right that he must follow and exhaust the administrative procedures which are laid out in the PLA and in the enabling legislation for the Inmate Grievance Office."

The court held a motions hearing on August 29, 2005 (Harris, J.).[6] At the hearing, appellant's counsel proffered that appellant did not have a cause of action against M & M. Dixon's lawyer explained that he had determined that "[t]here was absolutely no responsibility on [M & M's] part to prepare the site where this accident occurred or to clear up the site where the accident occurred." Counsel for M & M added: "I just want to make sure the dismissal is with prejudice." Thereafter, the court granted the "verbal dismissal motion . . . with prejudice as to" M & M.

The court then heard argument on the Department's motion. By agreement of the parties, the court granted the Department's motion for partial summary judgment as to damages, limiting appellant's potential recovery to the amount set forth in the statutory cap. But, the court denied the Department's motion in all other respects. In particular, it agreed with appellant that the language in C.S. § 10–305(a) indicated that filing a claim with the Board was permissive, and thus was not appellant's exclusive remedy. The court said:

Very simply stated, the Sundry Claims is optional, it is not mandatory. I think that is a pretty easy procedure. The one [issue] that caused me a little difficulty in the beginning

---

6. By that time, appellant had been released from prison.

was whether or not [appellant] had exhausted his administrative remedies, particularly the Inmate Grievance Office. [I]t would make no sense to me that someone other than an inmate would have to go through that procedure. And again, I stated the example of someone who is injured shortly before they have completed their sentence and they are released with a full three year statute of limitations at their option and available to them, would have to at some point ... go back and go though the Inmate Grievance Office to pursue their claims.

So I don't think that is applicable in this particular case. So, they are the reasons that I am going to deny the motion.

On September 8, 2005, the Department filed a "Motion for Reconsideration," challenging the court's ruling that filing a claim with the Board was merely an "optional remedy." It reiterated that, under C.S. § 10–308, the court lacked jurisdiction to consider the matter, and urged the court to grant its motion for summary judgment.

Appellee submitted numerous documents pertaining to the legislative history of the "exclusive remedy provision" set forth in C.S. § 10–308(c), which was added by amendment in 1993.[7] The Department argued:

> From the legislative history ... it is clear that the purpose of the 1993 exclusive remedy amendment was to make the Sundry Claims Board the exclusive remedy for an individual seeking compensation against the State for injuries suffered on the job while a prisoner in the Division of Correction, Patuxent Institution or the Baltimore City Detention Center. From the legislative history, there is no basis to support [appellant's] interpretation of the statutory language that [appellant] had the choice of filing a tort claim

---

7. The documents included a "Fiscal Note"; a "Fiscal Note Revised"; a "Position on Proposed Legislation"; a letter of March 23, 1993, from then State Treasurer Lucille Maurer to the Senate Judicial Proceedings Committee; a letter of January 26, 1993, from the Board to the House Judiciary Committee; a "Bill Analysis" for House Bill 163; a "Floor Report"; the vote records of the House of Delegates and the Senate; and the "1993 Legislative History For HB 0163."

against the State in court instead of having only the Board as a remedy against the State. Prior to the 1993 amendment, there was no law prohibiting an injured inmate from filing both a tort claim and a claim with the Board and from receiving compensation from both remedies. The purpose of the 1993 exclusive remedy legislation was to make the Board the exclusive remedy against the State and to foreclose the remedy of a tort claim.

Moreover, the Department took issue with the court's "decision that there was no sense in requiring exhaustion of the IGO because [appellant] was no longer an inmate." The Department pointed out that, under C.S. § 10–305(b),[8] appellant was "not yet foreclosed from refiling a claim with the Board even though he is now no longer a Division of Correction prisoner, as he has under that statute until as late as May 3, 2006 to refil[e]." But, it also noted that, "while still an inmate for ten months after his injuries, [appellant] never filed any grievance with the IGO alleging his injuries were caused by the negligence of state correctional employees, and the time for filing such a grievance expired after 30 days from the date of the Mary [sic] 4, 2004 injuries."[9]

On September 22, 2005, appellant's counsel filed correspondence with the court in response to the Department's "Motion for Reconsideration."[10] He argued that the legislation discussed by the Department did not apply to appellant because, "as a technical point, there has never been an allegation in this case that [appellant] was incapacitated in the performance of

---

8. As noted, under C.S. § 10–305(b), an inmate had until the later of "12 months after being released from the correctional facility," or "24 months after the date of injury" to file a claim with the Board.

9. Code of Maryland Regulations ("COMAR") 12.07.01.06A provides that a grievance with the IGO "shall be filed within 30 days from the date of the occurrence being grieved, or within 30 days after the grievant knew or should have known of the occurrence."

10. In the meantime, on September 13, 2005, the Department filed an "Answer to Complaint." It asserted, *inter alia*, that the court lacked subject matter jurisdiction to consider appellant's complaint and that appellant had failed to state a claim entitling him to relief.

work within the prison itself[.]" Dixon's lawyer also addressed the various documents appended to the Department's motion. With respect to the Fiscal Note, he asserted that "the aim" of the legislation "was to save the State money by disallowing claims which had previously been filed under the Tort Claims Act and to shepherd all claims to the miserly Sundry Claims Board." [11]

Dixon's counsel reiterated that C.S. § 10–305 "contains the permissive language 'may[.]' " He explained:

> With all of the input that [appellee's counsel] cites, the legislature did not see fit to make the filing of a claim with the Sundry Claims Board mandatory. If it has [sic] chosen to do so, it would have been evident from the fact that the word "may" would have been changed to the word "shall." This did not occur and we can only surmise that it was the legislative intent to allow alternative forms of redress for prisoner injuries which were caused by the negligence of the Department. The exclusivity provision only applied to inmates who actually took their claim all the way through to compensation. Once paid, they were barred from pursuing any other remedies. We all agree, that had Mr. Dixon actually received compensation from the Sundry Claims Board, the suit that is currently pending in your Court would be barred.

With respect to the IGO, appellant's counsel repeated that appellant "had no complaint about his conditions of confinement." Therefore, he maintained that the procedure for filing a complaint with the IGO was not applicable.[12]

On September 23, 2005, the court entered an order denying the Department's motion for reconsideration. Trial was scheduled for June 27, 2006.

---

11. Appellant also suggested that several documents from the bill file came "directly" from the Department, and were therefore "self serving."

12. Appellant's counsel did not refer to the PLA in his letter.

On June 7, 2006, the Department filed a "Motion in Limine of Defendant Department of Public Safety and Correctional Services." Referring to the arguments more fully expounded in its previous memoranda, the Department asked the court to preclude appellant from offering any evidence in support of his claim on the grounds that: (1) filing a claim with the Board was appellant's "exclusive monetary remedy" and (2) appellant had "failed to exhaust the administrative remedies available to him through the Inmate Grievance Office[.]" Specifically, the Department asked the court

> to exclude: (1) all evidence and testimony on behalf of [appellant's] claims that [appellant's] injuries were the result of [the Department's] and its employees' negligence on May 4, 2004, or in the alternative, to exclude (2) all evidence and testimony concerning or related to [appellant's] claimed permanent disability, ongoing physical limitations and ongoing pain and suffering, and to instruct the parties, counsel and witnesses during the trial of this action not to mention, refer to, question, attempt to convey or suggest to the jury in any manner that [appellant] has incurred any permanent disability, ongoing physical limitation or ongoing pain and suffering as the result of his injuries incurred on May 4, 2004.

In his response, appellant argued that the Department's requested relief was "barred by the doctrine of *res judicata,*" because "the precise issue raised in the Motion in Limine has been raised previously and has been adjudicated...." (Emphasis in original.) Accordingly, he asked the court to deny the motion.

On June 27, 2006, the parties convened for a hearing on the Department's motion in limine. In its oral ruling, the court (Femia, J.) looked to the exclusive remedy language in C.S. § 10–308, stating:

> [W]hat is the compensation authorized under this Subtitle?[ ] An injured inmate may file a claim for compensation. That's the only compensation authorized in this Subtitle.

\* \* \*

I read it as saying "The compensation authorized in [C.S.] 10–305 is the exclusive remedy against the State" . . . that's a very narrow finding, but that's the finding I'm going to make in granting the motion in limine.

In light of the court's evidentiary ruling, the Department orally renewed its motion for summary judgment. The court said:

I . . . will grant [appellee's] motion for summary [judgment] . . . on the grounds that by my [ruling on the] motion in limine I have denied [appellant] the ability to proceed with evidence in this case. He therefore has nothing to proceed with as a matter of law. I rule in favor of . . . the State of Maryland.[13]

## III. DISCUSSION[14]

### A.

Appellant contends that "filing a claim with the Sundry Claims Board was not a jurisdictional prerequisite to the filing of a civil suit" in circuit court. According to Dixon, the circuit court's initial ruling, to the effect that filing a claim with the Board is "permissive" and not mandatory, "was correct in all respects." As a result, argues Dixon, he was not required to exhaust administrative remedies prior to filing his action in circuit court. Dixon also asserts that, upon investigation, his attorney claims to have "learned that the Sundry Claims Board would not provide monetary compensation to [appellant] for the horrific injuries which he had received in May, 2004."[15] For that reason, he initiated the tort action in circuit court.

---

**13.** The court entered a "Civil Hearing Sheet" (signed as an order of the court) on June 29, 2006, granting the Department's motion in limine and its renewed motion for summary judgment.

**14.** On appeal, the parties generally advance the same arguments presented below. Therefore, we need not restate all of them.

**15.** Appellant does not cite to a statute or regulation for the proposition that the Board does not provide monetary compensation. Moreover,

Moreover, appellant insists that C.S. § 10–308(c) is inapplicable, because "[t]he requirements contained in the Sundry Claims Board legislation" were not met. He explains that the Board pays benefits "to an inmate who 'sustained a permanent partial disability or permanent total disability . . . [t]hat incapacitated the individual or materially reduced the individual[']s earning power in that type of work,' " but in this case "[t]here is no allegation that Mr. Dixon was incapacitated or that his earning power in the type of work that he was doing when he was injured was materially reduced." (Citation omitted.) To the contrary, argues appellant, "his allegations are that the negligence of the individuals involved left him with serious personal injuries which may or may not, at the time the suit was filed, have been determined to be permanent."

Looking to "the clear and unambiguous exclusive remedy language in the statute," the Department rejects Dixon's contention that filing a claim with the Board was merely optional. Indeed, it posits that there is no merit to Dixon's position that "CS § 10–305(a)(1) permits him to choose to pursue a tort action instead of a claim with the Board." Thus, appellee insists that the circuit court correctly determined that "compensation under the Board's statute was Dixon's exclusive remedy against the State." It reasons: "Because a claim to the Board for the compensation authorized by the Board's statutes was Dixon's 'exclusive remedy against the State for a claim that falls within the jurisdiction of the Board' and because Dixon voluntarily abandoned the claim that he had initially filed with the Board, and instead pursued a tort action against the Department, the circuit court properly granted summary judgment to the Department." (Citation omitted.)

In addition, the Department refutes Dixon's "unsupported statement" that "the tort action was filed after Dixon's attorney learned that the Board would not provide monetary compensation to Dixon for his injuries." It points out that

---

the Department points out that, under the heading "Compensation," COMAR 12.05.01.06 sets forth certain guidelines for awards of benefits by the Board.

appellant filed his tort action in October 2004, and the Board did not deny and dismiss Dixon's claim until July 20, 2005. Citing COMAR 12.05.01.06, appellee continues: "At the July 27, 2006 circuit court hearing, Dixon's attorney acknowledged the existence of the Board's schedule of compensation benefits in the Board's regulations." Moreover, the Department asserts: "Statutory provisions for State funding and payment of compensation approved by the Board is set forth in CS § 10–308(b)." Thus, argues the Department, "the claim that Dixon filed with the Board in August, 2004 was compensable by the Board, making the claim Dixon's exclusive remedy against the Department." [16]

## B.

We agree with the circuit court that the administrative remedy set forth in C.S. § 10–308(c) constituted appellant's *exclusive* remedy. In reaching this conclusion, we are guided by the principles of statutory interpretation.

It is well settled that the interpretation of a statute is a judicial function. *Maryland–National Capital Park and Planning Comm'n v. Anderson,* 164 Md.App. 540, 568, 884 A.2d 157 (2005), *aff'd,* 395 Md. 172, 909 A.2d 694 (2006); *see Salamon v. Progressive Classic Ins. Co.,* 379 Md. 301, 307, 841 A.2d 858 (2004). Determining the meaning of a statute is a question of law, subject to *de novo* review. *See Moore v. State,* 388 Md. 446, 452, 879 A.2d 1111 (2005); *Collins v. State,* 383 Md. 684, 688, 861 A.2d 727 (2004).

" 'The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature.' " *Chow v. State,* 393 Md. 431, 443, 903 A.2d 388 (2006) (quoting

---

16. According to the Department, the court "narrowly based its January 27, 2006 decision granting the Department's motion in limine and granting the Department summary judgment on the exclusive remedy provision in the Board's statue [sic], without ruling on the issue of whether Dixon also failed to exhaust the administrative remedies of the Inmate Grievance Office as is required by CS § 10–210(a) and the Prisoner Litigation Act[.]" (Citation omitted.)

*Kushell v. Department of Natural Resources,* 385 Md. 563, 576, 870 A.2d 186 (2005)). *See Dep't of Health & Mental Hygiene v. Kelly,* 397 Md. 399, 419–20, 918 A.2d 470 (2007); *Johnson v. Mayor and City Council of Balt. City,* 387 Md. 1, 11, 874 A.2d 439 (2005). We are guided in this endeavor by the statutory text. *Reier v. State Dep't of Assessments and Taxation,* 397 Md. 2, 26, 915 A.2d 970 (2007); *Deville v. State,* 383 Md. 217, 223, 858 A.2d 484 (2004); *Huffman v. State,* 356 Md. 622, 628, 741 A.2d 1088 (1999). We give the words of a statute their ordinary and usual meaning. *City of Baltimore Dev. Corp. v. Carmel Realty Assocs.,* 395 Md. 299, 318, 910 A.2d 406 (2006); *Ridge Heating, Air Conditioning and Plumbing, Inc. v. Brennen,* 366 Md. 336, 350, 783 A.2d 691 (2001).

⬛⬛⬛ In our effort to effectuate the Legislature's intent, we may consider " 'the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.' " *Chesapeake Charter, Inc. v. Anne Arundel County Bd. of Educ.,* 358 Md. 129, 135, 747 A.2d 625 (2000) (citation omitted); *see Frost v. State,* 336 Md. 125, 137, 647 A.2d 106 (1994). Moreover, if " ' "reasonably possible," ' " we read a statute "so ' "that no word, phrase, clause or sentence is rendered surplusage or meaningless," ' " *Del Marr v. Montgomery County,* 169 Md.App. 187, 207, 900 A.2d 243 (2006) (citations omitted), *aff'd,* 397 Md. 308, 916 A.2d 1002 (2007), or "superfluous or redundant." *Blondell v. Baltimore City Police Dep't.,* 341 Md. 680, 691, 672 A.2d 639 (1996); *see Collins,* 383 Md. at 691, 861 A.2d 727; *Eng'g Mgmt. Servs., Inc. v. Md. State Highway Admin.,* 375 Md. 211, 224, 825 A.2d 966 (2003); *Mayor & Council of Rockville v. Rylyns Enters., Inc.,* 372 Md. 514, 551, 814 A.2d 469 (2002). Further, we are obligated to construe the statute as a whole, so that all provisions are considered together and, to the extent possible, reconciled and harmonized. *Deville,* 383 Md. at 223, 858 A.2d 484; *Navarro–Monzo v. Washington Adventist,* 380 Md. 195, 204, 844 A.2d 406 (2004). Where "appropriate," we interpret a provision "in the context of the entire statutory scheme of

which it is a part." *Gordon Family Partnership v. Gar on Jer,* 348 Md. 129, 138, 702 A.2d 753 (1997).

 If the statute is not ambiguous, we generally will not look beyond its language to determine legislative intent. *Kaczorowski v. Mayor & City Council of Baltimore,* 309 Md. 505, 513, 525 A.2d 628 (1987); *Maisel v. Montgomery County,* 94 Md.App. 31, 37, 614 A.2d 1333 (1992). If the language of the statute is ambiguous, however, then " 'courts consider not only the literal or usual meaning of the words, but their meaning and effect in light of the setting, the objectives and purpose of [the] enactment [under consideration].' " *Fraternal Order of Police v. Mehrling,* 343 Md. 155, 174, 680 A.2d 1052 (1996) (citation omitted). Moreover, when faced with an ambiguous statute, the court "may employ all the resources and tools of statutory construction" to ascertain its meaning, "including legislative history, prior case law, and statutory purpose." *Reier,* 397 Md. at 27, 915 A.2d 970 (internal citations omitted). *See Mayor and City Council of Baltimore v. Chase,* 360 Md. 121, 131, 756 A.2d 987 (2000) (noting that even when the language of a statute is plain, we may confirm our construction of it by reference to its legislative history).

With these principles in mind, we turn to review C.S. § 10–308. It provides, in part:

(c) *Exclusive remedy.*—The compensation authorized under this subtitle *is the exclusive remedy against the State for a claim that falls within the jurisdiction of the Board.*

(Emphasis added.)

Appellant insists here, as he did below, that filing a claim with the Board "was permissive and not mandatory." He relies on the use of the word "may" in C.S. § 10–305(a)(1), which provides: "An injured inmate *may* file a claim for compensation against the State under this subtitle with the Board." (Emphasis added.)

Contrary to appellant's position, the use of the word "may" does not suggest that appellant had the option of choosing between various channels of relief. As we see it, the language in issue is meant to recognize that an inmate has a choice, in

the first instance, as to whether to file a claim; the claim itself is not mandatory or compulsory.

 In deciding the plain meaning of a statutory term or phrase, such as the word "may," we are permitted to consult the dictionary. *Rouse–Fairwood Limited P'ship v. Supervisor of Assessments of Prince George's County*, 120 Md.App. 667, 687, 708 A.2d 19 (1998), *appeal after remand*, 138 Md. App. 589, 773 A.2d 535 (2001), *cert. denied*, 365 Md. 475, 781 A.2d 780 (2001). *See also Department of Assessments & Taxation v. Maryland–Nat'l Capital Park & Planning Comm'n*, 348 Md. 2, 14, 702 A.2d 690 (1997); *Rossville Vending Machine Corp. v. Comptroller of Treasury*, 97 Md.App. 305, 316, 629 A.2d 1283, *cert. denied*, 333 Md. 201, 634 A.2d 62 (1993). BLACK'S LAW DICTIONARY 1000 (8th ed.2004) defines "may" as follows: "1. To be permitted to . . . 2. To be a possibility[.]" Alternatively, the term is defined: "Loosely, is required to; shall; must[.]" *Id.* Further, the editors note: "In dozens of cases, courts have held *may* to be synonymous with *shall* or *must,* usu. in an effort to effectuate legislative intent." *Id.* (Emphasis in original.) [17]

Our view of the word "may" in the context of this statute is strengthened by C.S. § 10–309(a)(1), which provides: "A claimant aggrieved by a final determination of the Board *may* file a petition for judicial review in the circuit court . . ." (Emphasis added.) As noted, we are to construe statutes as a whole. C.S. § 10–309 obviously uses the word "may" to indicate that a losing party is entitled to pursue further review, but such review clearly is not compelled.

Thus, we agree with the Department that the statutory language is unambiguous. When read together, C.S. § 10–305(a) and C.S. § 10–308(c) indicate that an inmate who

---

17. The Revisor's Note for the statutory provision states, in part:

In subsection (a)(1) of this section, the reference that an inmate "may" file a claim is substituted for the former reference that the inmate "shall have the right to" file a claim for consistency with regard to discretionary language throughout this article.

Laws of Maryland 1999, Chapter 54, Revisor's Note to § 10–305.

sustains a personal injury arising out of or in the course of working in a correctional institution, who otherwise meets the statutory criteria, has the right, if he or she chooses to exercise it, to pursue a claim for compensation against the State. But, if he or she chooses to pursue such a claim, the Board is the exclusive avenue to obtain compensation; the statute precludes an inmate from filing a tort action against the State to recover compensation.

Because the text of the statute is unambiguous, we need not look beyond the plain language of the statute to discern the intent of the Legislature. *See Stanley v. State,* 390 Md. 175, 182, 887 A.2d 1078 (2005) (" 'Where the statutory language is free from ... ambiguity, courts will neither look beyond the words of the statute itself to determine legislative intent nor add to or delete words from the statute.' ") (Citations omitted.) But, even if we were to determine, *arguendo,* that the statute is ambiguous, a review of the legislative history of the 1993 amendment, which added the exclusivity provision, would support our position that the Board was appellant's sole avenue for relief.

In 1993, the exclusive remedy provision now found in C.S. § 10–308(c) was added to Art. 41, § 4–701, the former codification of the Sundry Board statute. *See* Chapter 133 of the Acts of 1993, effective October 1, 1993. Until then, a DOC inmate seeking to recover for personal injuries arising out of and in the course of work performed while incarcerated could file a claim against the State under the Maryland Tort Claims Act *or* by way of the Board. Put another way, prior to the 1993 amendment, the statute did not provide that compensation available through the Board was an inmate's exclusive remedy against the State. As the Department points out, "the 1993 legislation was enacted to make the compensation under the Board's statute the exclusive remedy against the State for compensating an inmate ... for personal injuries incurred while working in a correctional institution."

Under the heading "Summary of Bill," the "Bill Analysis" in the Senate Judicial Proceedings Committee for House Bill ("H.B.") 163, the enacting legislation, stated:

This bill provides that a claim against the Sundry Claims Board is the exclusive remedy against the State for a prisoner who is injured while working in a correctional institution.

This bill repeals the requirement that a prisoner must have been injured while engaged in extra-hazardous work in order to receive benefits approved by the Sundry Claims Board.

The bill clarifies that any personal injury for which benefits may be approved by the Sundry Claims Board must arise out of and in the course of work for which wages or a stipulated sum are payable by one or more of the institutions under the supervision of the Division of Correction.

The "Fiscal Note" to H.B. 163 explained, in part:

Currently, inmates can seek to [sic] relief for these injuries from either the Board or under the Maryland Tort Claims Act. Awards granted under the Act are paid by the State Treasurer from the State's Self Insurance Trust Fund. The limit on awards under the Code of Maryland Regulations applicable to the Board is significantly less than that permitted under the Maryland Tort Claims Act.

The question, then, is whether appellant met the criteria of C.S. § 10–304, which governs the Board's "Administration of benefits." As noted, it provides:

The Board shall administer benefits as provided under this subtitle to an individual who, while an inmate in ... a correctional facility in the Division of Correction:

(1) was engaged in work *for which wages or a stipulated sum of money was paid by a correctional facility;* and

(2) *sustained a permanent partial disability or permanent total disability:*

(i) as a result of a *personal injury arising out of an in the course of work for which wages or a stipulated sum of money was paid by a correctional facility;* and

(ii) that *incapacitated the individual or materially reduced the individual's earning power in that type of work.* (Emphasis added.)

We are readily satisfied that appellant's injury fell within the Board's jurisdiction, because:

1) Dixon was engaged in work while he was a DOC inmate;

2) he sustained an injury that arose out of and in the course of his work;

3) he was paid a wage by the DOC for his work;

4) he sustained a permanent disability;

5) the injury would have incapacitated or materially reduced Dixon's earning power in that type of work.

In reaching our conclusion, we look to appellant's signed "Claim for Compensation," dated August 13, 2004, which was an exhibit below. There, appellant alleged that he was injured on May 4, 2004, due to an accident "arising out of and in the course of [his] employment" at DOC. Notably, the claim form tracked the language of § 10–304(2), providing separate sections for a claimant to complete *"IF TOTALLY DISABLED BY THE ACCIDENT"* or *"IF PARTIALLY DISABLED BY THE ACCIDENT."* Appellant completed the former section, indicating that his injuries were "[p]ermanent." In response to the question, "[B]y how much have your weekly earnings been reduced by this injury," appellant responded: "I cannot work." In addition, the claim form indicated that appellant had been engaged in work while an inmate at the House of Corrections, for which he received a wage of "$.90" per day. These averments satisfied the statutory criteria.

Moreover, the Department submitted a copy of its request for admission to appellant; his admission to appellee's Question No. 7 demonstrated that Dixon satisfied the Board's criteria. As noted, Dixon admitted the following:

On May 4, 2004 at the time [appellant] was injured, [appellant] was an inmate at a correctional facility of the Division of Correction engaged in work for which [appellant] was receiving wages or a stipulated sum of money at the

rate of ninety cents ($0.90) a day by the Division of Correction correctional facility, that [appellant] sustained a permanent disability as a result of personal injuries arising out of and in the course of work for which wages or a stipulated sum of money was paid by the Division of Correction correctional facility, that [appellant's] injuries incapacitated [appellant], and that [appellant's] injuries were accidental.[18]

■ It follows that because appellant did not pursue his claim with the Board, he did not exhaust his administrative remedies. It is a longstanding principle of administrative law that one must ordinarily exhaust statutorily prescribed administrative remedies before resorting to the courts. *See Moose v. Fraternal Order of Police*, 369 Md. 476, 486, 800 A.2d 790 (2002); *Montgomery County v. Broadcast Equities, Inc.*, 360 Md. 438, 452, 758 A.2d 995 (2000); *Finucan v. Md. State Bd. of Physician Quality Assurance*, 151 Md.App. 399, 422–23, 827 A.2d 176 (2003), *aff'd*, 380 Md. 577, 846 A.2d 377 (2004).

In *McKart v. United States*, 395 U.S. 185, 195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), the Supreme Court noted that one purpose of the exhaustion doctrine is to prevent the possibility "that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." This Court

---

**18.** Dixon asserts in his brief that "[t]here [was] no allegation that Mr. Dixon was incapacitated or that his earning power in the type of work that he was doing when he was injured was materially reduced." The record reflects otherwise, as we have shown. Under the principle of judicial estoppel, appellant might perhaps be foreclosed from disputing the factual assertions he made at the outset of this matter. *See, e.g., Eagan v. Calhoun*, 347 Md. 72, 87–88, 698 A.2d 1097 (1997)("Maryland has long recognized the doctrine of estoppel by admission, derived from the rule laid down by the English Court of Exchequer in *Cave v. Mills*, 7 H. & W. 927 that '[a] man shall not be allowed to blow hot and cold, to claim at one time and deny at another.' ") *See Dashiell v. Meeks*, 396 Md. 149, 171, 913 A.2d 10 (2006)("Before judicial estoppel may be applied, three circumstances must exist: (1) one of the parties takes a factual position that is inconsistent with a position it took in previous litigation, (2) the previous inconsistent position was accepted by a court, and (3) the party who is maintaining the inconsistent positions must have intentionally misled the court in order to gain an unfair advantage.")

explained in *Boyd v. Supervisor of Assessments of Baltimore City*, 57 Md.App. 603, 471 A.2d 749 (1984):

The purposes of the doctrine of exhaustion of administrative remedies are threefold. It is designed to encourage the determination of particular issues by agencies with special expertise as to those issues; to avoid the judicial resolution of matters the legislature thought could be best performed by an agency; and to keep from the courts matters they might never be called upon to decide if the prescribed administrative remedy was followed.

*Id.* at 606, 471 A.2d 749 (quotations omitted). *See also McGee v. United States*, 402 U.S. 479, 489–91, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971) (in criminal prosecution for draft evasion, exhaustion doctrine applied to prevent defendant from raising the defense that he was a conscientious objector, because he had not pursued that contention before the Selective Service Board); *Brown v. Fire & Police Employees' Retirement System*, 375 Md. 661, 669, 826 A.2d 525 (2003) ("This Court adheres firmly to the rule that statutorily prescribed administrative remedies ordinarily must be pursued and exhausted.... This principle that statutory administrative remedies normally must be exhausted is a policy embedded in various enactments by the General Assembly and is supported by sound reasoning."); *Bulluck v. Pelham Wood Apartments*, 283 Md. 505, 519, 390 A.2d 1119 (1978) (" 'A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reason for its action.' ") (Citation omitted); *Gingell v. Bd. of County Comm'rs for Prince George's County*, 249 Md. 374, 376–77, 239 A.2d 903 (1968) (specifying the reasons for the exhaustion doctrine).

The recent case of *Prince George's County, Maryland v. Ray's Used Cars*, 398 Md. 632, 922 A.2d 495 (2007), is instructive. There, the Court reaffirmed what it said in *Zappone v. Liberty Life*, 349 Md. 45, 60–61, 706 A.2d 1060 (1998):

"Whenever the Legislature provides an administrative and judicial review remedy for a particular matter or mat-

ters, the relationship between that administrative remedy and a possible alternative judicial remedy will ordinarily fall into one of three categories.

*First,* the administrative remedy may be exclusive, thus precluding any resort to an alternative remedy. Under this scenario, there simply is no alternative cause of action for matters covered by the statutory administrative remedy.

*Second,* the administrative remedy may be primary but not exclusive. In this situation, a claimant must invoke and exhaust the administrative remedy, and seek judicial review of an adverse administrative decision, before a court can properly adjudicate the merits of the alternative judicial remedy.

\* \* \*

*Third,* the administrative remedy and the alternative judicial remedy may be fully concurrent, with neither remedy being primary, and the plaintiff at his or her option may pursue the judicial remedy without the necessity of invoking and exhausting the administrative remedy."

*Id.,* slip op. at 11–12 (emphasis in *Zappone). See also Md. Reclamation v. Harford Cty.,* 342 Md. 476, 493, 677 A.2d 567 (1996) ("When the legislative body expressly states that the administrative remedy is primary or exclusive or must be exhausted, the mandatory nature of the exhaustion requirement is underscored. Such express language 'is totally inconsistent with the notion that the [administrative agency's] jurisdiction over [the matter] can be circumvented[.]' ")(quoting *McCullough v. Wittner,* 314 Md. 602, 609, 552 A.2d 881 (1989)) (alterations in *Md. Reclamation* ).

■■■ Here, the Legislature's intent with respect to the Board's remedy is clear. By the express terms of C.S. § 10–308, the administrative remedy is "exclusive," although the statutory scheme also provides for a right to judicial review of an adverse determination of the Board. *See* C.S. § 10–309. Under common law exhaustion principles and the statutory mandate, appellant was required to pursue his claim with the Board. Thus, the court properly granted summary judgment

to appellee, because appellant failed to exhaust administrative remedies.[19]

## C.

In light of our disposition, we shall only briefly address the parties' arguments regarding the IGO and the PLA. The Department suggests that, even if C.S. § 10–308 does not apply, appellant was required to comply with the PLA and the IGO. Appellant disagrees.

In *Massey v. Galley*, 392 Md. 634, 643, 898 A.2d 951 (2006), the Court of Appeals summarized the legislative history of the PLA, stating:

> The Prisoner Litigation Act was enacted by Ch. 495 of the Acts of 1997. According to the first words of the Title to Ch. 495, the purpose of the Act was to impose certain requirements upon "a prisoner who files a civil action relating to the *conditions of confinement.*" (Emphasis added). The Department of Legislative Reference's file on House Bill 926 of the 1997 legislative session, which became Ch. 95, indicates that the bill as originally introduced was patterned after federal legislation concerning prisoner actions in the federal courts . . .

---

**19.** We have concluded that the court correctly ruled that appellant's sole means of obtaining compensation was by way of a claim filed with the Board. But, the court did not specifically rule that appellant failed to exhaust his administrative remedies. As we see it, the two are interrelated; if the Board was the sole avenue of relief, then appellant had to exhaust his administrative remedies.

"Appellate courts ordinarily review the grant of summary judgment 'only on the grounds relied upon by the trial court.' " *Richman v. FWB Bank*, 122 Md.App. 110, 147, 712 A.2d 41 (1998) (quoting *Blades v. Woods*, 338 Md. 475, 478, 659 A.2d 872 (1995)), *aff'd*, 354 Md. 472, 731 A.2d 916 (1999); *see Gross v. Sussex*, 332 Md. 247, 254 n. 3, 630 A.2d 1156 (1993); *Vogel v. Touhey*, 151 Md.App. 682, 706, 828 A.2d 268, *cert. denied*, 378 Md. 617, 837 A.2d 927 (2003); *Hoffman v. United Iron and Metal Co., Inc.*, 108 Md.App. 117, 132–33, 671 A.2d 55 (1996). But, " '[i]f the alternative ground is one upon which the circuit court would have had no discretion to deny summary judgment, summary judgment may be granted for a reason not relied on by the trial court.' " *Ragin v. Porter Hayden Co.*, 133 Md.App. 116, 134, 754 A.2d 503 (citation omitted), *cert. denied*, 361 Md. 232, 760 A.2d 1107 (2000).

As noted, C.J. § 5–1001(d) defines "Conditions of confinement" as "any circumstance, situation or event that involves a prisoner's custody, transportation, incarceration, or supervision." *See Evans v. State,* 396 Md. 256, 335, 914 A.2d 25 (2006) (concluding that an action challenging execution protocol was a condition of confinement within the meaning of the statute); *Massey,* 392 Md. at 650–51, 898 A.2d 951 (concluding that a request pursuant to the Public Information Act was not a condition of confinement within the meaning of the PLA).

Appellant relies on *Adamson v. Correctional Medical Services,* 359 Md. 238, 753 A.2d 501 (2000), to support his claim that exhaustion was not required. The Department argues that *Adamson* "is not applicable to whether the compensation under the Board's statute is [a prisoner's] exclusive remedy against the Department" for a work related injury.

*Adamson* involved a claim for damages lodged by a DOC inmate against a private medical provider under contract with the State. The inmate asserted breach of contract and negligence claims against the medical provider, but the trial court dismissed the suit for failure to exhaust administrative remedies under the PLA.[20]

The Court of Appeals held that the administrative exhaustion requirement of the PLA did not encompass "prisoner malpractice lawsuits filed *against private contractors* who provide medical services to prisoners under the control and responsibility of the [Division of Correction]." *Id.* at 250, 753 A.2d 501 (Emphasis added.) In reaching its decision, the Court looked to C.J. § 5–1001(c), which defines "civil actions" subject to the PLA's exhaustion requirement, as " '[a]ny tort claim against a custodian, the custodian's officers or employees, or any employee or official of the Department [of Public Safety and Correctional Services].' " *Id.* at 269, 753 A.2d 501 (alteration in *Adamson*). The Court also noted that the Correctional Services Article "establishes for covered inmate grievances an administrative remedy through the IGO that is

---

**20.** *Adamson* did not involve a prisoner's work-related injury, nor does the Court discuss the Sundry Board or C.S. § 10–308.

primary, but not exclusive, and which must be invoked and exhausted before an inmate ordinarily may seek review of an adverse decision." *Id.* at 257, 753 A.2d 501. Referring to C.S. § 10–206, the Court concluded: "[T]he IGO is specifically confined to address and investigate complaints 'against an official or employee of the Division of Correction.' " *Id.* at 269, 753 A.2d 501.

Here, in its motion in limine, the Department cited *McCullough v. Wittner, supra,* 314 Md. 602, 552 A.2d 881 (1989), and *Earle v. Gunnell,* 78 Md.App. 648, 554 A.2d 1256 (1989), to support its argument that appellant "failed to exhaust the administrative remedies available to him through the Inmate Grievance Office[.]" In *McCullough,* 314 Md. at 605, 552 A.2d 881, an inmate brought a common law assault and battery action against a correctional officer. The circuit court granted the correctional officer's motion to dismiss the action on the ground that the inmate failed to file a grievance with the IGO and thus failed to exhaust his administrative remedies. *Id.* In the Court of Appeals, the inmate argued that the IGO did "not have jurisdiction over tort claims seeking damages for personal injuries." *Id.* at 606, 552 A.2d 881. The Court rejected that argument, reasoning, *id.* at 609, 552 A.2d 881:

> In light of the nature of McCullough's complaint, the necessity for invocation and exhaustion of administrative remedies could not have been more forcefully expressed in the statute. The General Assembly mandated that "[n]o court shall entertain an inmate's grievance or complaint within the jurisdiction of the Inmate Grievance Commission unless and until" the inmate has invoked and exhausted his remedies before the Commission. Art. 41, § 4–102.1(*l* ).[21] This sweeping language, delineating the need to invoke and exhaust the administrative remedy, is totally inconsistent with the notion that the Commission's jurisdiction over inmate grievances can be circumvented by the simple expedient of making a claim for money damages.

---

**21.** Former Art. 41, § 4–102.1(*l* ) is now codified at C.S. § 10–210, set forth, *supra.*

*See Earle,* 78 Md.App. at 652, 554 A.2d 1256 (relying on *McCullough* to hold that a prison inmate who brought an action seeking monetary damages from the State for personal injuries resulting from a correction officer's alleged tortious conduct was required to exhaust the IGO procedure before proceeding under the Maryland Tort Claims Act).

Notably, both *McCullough* and *Earle* were decided prior to the enactment of the PLA, or the addition in 1993 of the exclusive remedy provision. *But see Maryland House of Correction v. Fields,* 348 Md. 245, 259–60, 703 A.2d 167 (1997)(quoting former Art. 41, § 4–102.1(c), and observing "that a person confined under the custody of the Division of Correction ..., 'who has *any* grievance or complaint against *any* officials or employees of the Division of Correction ...,' must invoke and exhaust the administrative remedy under the Inmate Grievance statute before obtaining an adjudication under an alternative common-law or state statutory judicial remedy")(emphasis in *Fields), abrogated on other grounds by Moats v. Scott,* 358 Md. 593, 751 A.2d 462 (2000).

■■■■■ We conclude that the exclusive remedy provision of C.S. § 10–308 applies here. Thus, Dixon was required to file a claim with the Sundry Board, rather than the IGO. If " 'two statutes, one general and one specific, are found to conflict, the specific statute will be regarded as an exception to the general statute.' " *Anderson,* 395 Md. at 194, 909 A.2d 694 (citation omitted). As the Court explained in *State v. Ghajari,* 346 Md. 101, 115, 695 A.2d 143 (1997), "when two statutes appear to apply to the same situation, the Court will attempt to give effect to both statutes to the extent that they are reconcilable." To the extent of an irreconcilable conflict, "the specific statute is controlling...." *Id.* at 116, 695 A.2d 143. *See also Anderson,* 395 Md. at 183, 194, 909 A.2d 694; *Mayor of Oakland v. Mayor of Mountain Lake Park,* 392 Md. 301, 316–17, 896 A.2d 1036 (2006).[22] But, even assuming that

---

**22.** Our disposition makes it unnecessary to address appellant's contention that the circuit court erred in issuing a ruling that was contrary to

appellant's claim related to a "condition of confinement," the result is the same—Dixon failed to exhaust administrative remedies.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

its earlier denial of the Department's motion for summary judgment. In any event, we point out that a judge is " 'free at any time during the trial to reconsider any prior ruling in the case, whether made by him or by another judge' " of the same court. *Placido v. Citizens Bank & Trust Co. of Maryland,* 38 Md.App. 33, 45, 379 A.2d 773 (1977) (citations omitted). *See Scott v. State,* 379 Md. 170, 184, 840 A.2d 715 (2004)(" '[A]s a general principle, one judge of a trial court ruling on a matter is not bound by the prior ruling in the same case by another judge of the court.' ") (Citations omitted.)